MEMPHIS MEMORIAL PARK, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 49259, 53458. Promulgated August 11, 1933.

*H. A. Mihills, C.P.A.*, for petitioner.
*Frank M. Thompson, Esq.*, for the respondent.

## OPINION.

GOODRICH: Petitioner's first issue is enlarged upon brief to provide alternative contentions; first, that 25 per centum of the amounts received upon all contracts for sale of lots should be regarded as received upon trust to meet the cost of future construction of improvements, and hence be eliminated from gross income; or, second, that the estimated cost of contemplated improvements should be included as a part of the cost of the property to be used in computing gain upon sales of plots as made. There is ample authority for the proposition that moneys received upon trust are to be excluded from gross income; *Los Angeles Cemetery Assn.*, 2 B.T.A. 495; *Greenwood Cemetery Assn.*, 2 B.T.A. 910; *Springdale Cemetery Assn.*, 3 B.T.A. 223; *Metairie Cemetery Assn.*, 4 B.T.A. 903; *Troost Avenue Cemetery Assn.*, 4 B.T.A. 1169; *Inglewood Park Cemetery Assn.*, 6 B.T.A. 386; *Evergreen Cemetery Assn. of Chicago*, 21 B.T.A. 1194; *Acacia Park Cemetery Assn., Inc.*, 27 B.T.A. 233; *Portland Cremation Assn.* v. *Commissioner*, 31 Fed. (2d) 843; but the question here is whether a portion of the selling price of petitioner's lots was so received.

Likewise, it has been recognized that the estimated expenditures for improvements which the vendor is bound to make may be included as a part of the cost of the property; *Milton A. Mackay*, 11 B.T.A. 569; *Birdneck Realty Corp.*, 25 B.T.A. 1084; but the question here is whether petitioner was bound to make improvements.

We are of opinion that both petitioner's claims must be denied. From the onset it must be remembered that petitioner is not seeking to exclude from its income amounts received upon trust to meet the cost of perpetual care, a service which would be to the benefit of the lot owners. A fund for that purpose was established as provided by statute and respondent has eliminated from petitioner's gross income the proper additions to that fund. Here petitioner seeks to exclude from its income amounts expended, or to be expended, for improvements to its own property. From those improvements it reaped a benefit through increased sales, at increased prices. As a practical matter, it is obvious that some expenditure for improvements was necessary if petitioner was to carry out the purpose for which it was organized—the sale of burial plots—for some rearrangement of unimproved property is necessary, not only to induce purchases of plots therein, but to create the plots to be sold. Such improvements had to be made before petitioner could carry on its business; whether

the cost thereof was met from income derived from sales of lots or from capital funds derived from sales of stock, or other means, seems immaterial. Also obvious is the desirability of constructing, as early as possible, permanent improvements beyond those essential to a beginning of operations for the reason that, as the property in general is improved, it becomes easier to make sales, and prices may be increased. This is borne out by the fact that petitioner's expenditures for permanent improvements during the first five years of its operations were considerably in excess of 25 per centum of its sales, and that as the improvements progressed, the scale of prices increased.

Excerpts from some of petitioner's printed advertising matter, of evidence in the case, serve to illustrate. Leaders such as " Continual adding of improvements increases values and means higher prices " and " Prices are advancing " call attention to sales of lots in specified sections at a " Special Pre-Development Price ", or at "Attractive Prices—Prior to Completion of Development ", and the following shows the effect of successful development of the property:

Nearly one hundred leading newspapers * * * carried a telegraphic story * * * which referred to Memphis Memorial Park as "one of the bright spots of the nation's business horizon." The story was inspired by the fact that our sales volume is greater than in the last three years.

The record before us does not disclose to what extent petitioner, through its literature and its salesmen, represented to the public that one fourth of the selling price of every lot was to be applied to permanent improvements of the cemetery, but assuming that it did so, it would seem that in making that representation, and in including such a provision in its contracts of sale with its purchasers, it was not assuming an obligation to do specific acts with respect to any particular plot conveyed, but was promising only to make improvements to its own property—a course which doubtless was desired by the purchasers but which certainly was sound business policy for the company. That fact, in our opinion, is sufficient to distinguish this case from those of *Acacia Park Cemetery Assn., Inc., supra,* and *Portland Cremation Assn., supra* (reversing 10 B.T.A. 65), upon which petitioner relies.

Examining the resolution of the directors, the notice to the lot owners, and the provision incorporated into the contracts respecting the improvement fund, we are not convinced that a fourth of petitioner's gross sales was received upon trust and therefore should be excluded from its gross income. It is to be noted that this appropriation of sales proceeds was not made until October 1928, and that the record contains no segregation of sales made thereafter, but even though we assume (but do not so decide) that the attempt to make

this action retroactive was successful, as petitioner contends it was, still we see, not a trust, but a contract, for the breach of which the law provides adequate remedy and which does not remove the proceeds of sale from the statutory definition of income (sec. 213, Revenue Act of 1926). Receipts cannot be deemed trust funds unless the trust is definitely established and maintained, and its funds so controlled (barring fraudulent misapplication) as to insure their application to the ends for which the trust was created. We conclude that here no trust fund was established. Although an account was set up on petitioner's records to which was credited a fourth of the amounts of its sales contracts, such amounts were commingled with the company's general funds and always within its control. Petitioner carried on its improvement program apparently without regard to the amount which, according to the account, was available for that purpose, and the nature and extent of the improvements to be made was entirely within the discretion of petitioner's directors. Moreover they, having established the fund by resolution, might eliminate it by the same means, for while the contract mentions certain improvements for which the fund was to be used, it fails to provide expressly that such amounts were to be received upon trust. Then, too, the contract leaves the expenditure of the fund so far to the discretion of the directors as to prevent the establishment of a definite trust for a specific purpose. The " purpose of developing, enlarging, improving, * *. * including real estate " might well authorize the purchase of additional property, and it would be difficult to conceive of a broader provision respecting improvements for the benefit of a lot owner than " the purchase of equipment and for any other charges which, in the judgment of the board of directors, shall be necessary or proper for the establishment of a memorial park, or burial ground."

We conclude that the portion of the amount of lot sales here in controversy was not received upon trust, but was properly a part of petitioner's gross income. Cf. *American Cemetery Co.* v. *United States*, 28 Fed. (2d) 918. Since it was received as income its subsequent disposition, assignment, or restricted use did not affect the taxability upon receipt. *Lucas* v. *Earl*, 281 U.S. 111; *Moran* v. *Lucas*, 36 Fed. (2d) 546; *Cleveland Ry. Co.* v. *Commissioner*, 36 Fed. (2d) 347; *Lonsdale* v. *Commissioner*, 32 Fed. (2d) 537; certiorari denied, 280 U.S. 575.

Nor do we think that petitioner's estimate of the cost of the contemplated improvements should be added to the cost of the plots in advance of expenditures made therefor. It is argued that, because certain of the improvements were mentioned specifically in the sales contracts, petitioner was bound to make them, and that therefore their estimated cost should be added to the cost of the property.

But even assuming that petitioner was bound to make the improvements so mentioned, still it was bound for no specified expenditure. True, it had consulted architects and contractors and had settled upon the type, size, and construction of the permanent improvements it planned to erect and had drawn up a schedule showing the estimated costs thereof. But it was not bound to abide by those plans, nor to spend the amounts estimated. The matter was entirely within the control of petitioner's directors; the plans, and the amount of the expenditures, might be changed at will. The proof shows that this was done in one instance at least, that of the Masonic memorial, which was mentioned on the contract as a shaft but which a change of plan turned into a chime tower. There is nothing in the record before us to show that the construction schedule was a part of the agreement with the lot owners or, indeed, that they had knowledge of it. The cost of the improvements could be regulated by the directors as they desired, and still their representations to the public made good. For instance, to take another example of an improvement mentioned in the contract, a memorial chapel was promised, and its cost estimated at $40,000. Yet, had it been necessary to curtail this expenditure, the directors had power to do so, and a building costing one half or one third of that amount might still be a chapel, and its construction would doubtless discharge any obligation (the existence of which we are assuming) which petitioner assumed under its contracts and its advertising. It will be noted that in the cases previously cited and upon which petitioner relies, the expenditures which the vendor was bound to make, and which consequently were added to the cost of the property, were either fixed in amount or the improvements were so specifically described that their cost could be estimated with reasonable accuracy. Such is not here the case. Respondent has added to the cost basis of the property expenditures for improvements as made, and in that course we sustain him. However, we note that his computations of profits are based upon a reserve of 6,000 lots whereas the proof shows only 5,400 lots available for sale and that number, therefore, is the correct basis. This error may be corrected upon settlement.

With respect to the second issue we sustain petitioner, for, in our opinion, the suit which it defended proximately resulted from its business, and, consequently, its expenditures made in connection therewith are deductible as ordinary and necessary expenses. *Kornhauser* v. *United States*, 276 U.S. 145; *Continental Screen Co.*, 19 B.T.A. 1095; affd., 53 Fed. (2d) 210.

We sustain respondent also in denying the deduction of $5,000 as salary to Bosworth in 1928, for we are not satisfied that petitioner's accounts were kept on an accrual basis so that this item was properly

accruable in that year. While petitioner's chief witness testified that the accounts were so kept, that testimony is in conflict with the statement sworn to on the return that the accounts were kept on a basis of cash receipts and disbursements. This variance was not explained at trial; furthermore, the details of the return itself indicated that the statement thereon is correct. Consequently, we have relied upon it and found as a fact that petitioner's accounts were kept on the cash basis. The salary, therefore, is not deductible as an expense until paid.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*