## L. B. REAKIRT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 71904.   Promulgated February 28, 1934.

*J. W. Peck, Esq.*, for the petitioner.
*I. Graff, Esq.*, for the respondent.

### OPINION.

VAN FOSSAN: In this proceeding petitioner contests a deficiency of $1,875 for the year 1930.   The deficiency arose upon respondent's disallowance of a deduction claimed by petitioner on account of a fee of $7,500 paid to lawyers for services rendered in preventing an illegal taking of property by condemnation.   Petitioner maintains the payment was either a proper business expense or a loss.

The facts were largely stipulated.

The petitioner is an individual residing in Cincinnati, Ohio, and is engaged in the business of real estate and investments for his own account.

In March 1928 the city of Cincinnati, by its city council, passed an ordinance to appropriate a strip of land 25 feet in width adjacent to the south line of Fifth Street, one of the principal thoroughfares of the city, for the purpose of widening the street.   By the same ordinance, the city undertook to condemn additional areas adjacent to this strip by way of " excess condemnation."

The petitioner owned a tract at the corner of Fifth and Sycamore Streets, Cincinnati, Ohio, fronting approximately 138 feet on Fifth Street and 149 feet on Sycamore Street, in the central part of the city, valued for taxation at $277,400.   During the injunction proceedings hereinafter mentioned and the year 1930 there was a small temporary oil station on this tract near the corner and the remainder of it was for the time being used as a parking lot, although the im-

provement of the area by a large building was then in contemplation. The 25-foot strip of petitioner's tract actually being used for street widening constituted about one sixth of the area of the lot, but the city proposed to take the entire lot under its aforesaid ordinance, condemning additional areas adjacent to this strip by way of "excess condemnation."

In 1928 the petitioner and two other owners of property fronting on Fifth Street commenced actions in the Federal court to enjoin the city from appropriating and taking property beyond the 25-foot strip and lying within this additional area, upon the grounds that the taking was not in accordance with the applicable provisions of the Constitution and statutes of Ohio and would constitute a deprivation of property without due process of law in violation of the Fourteenth Amendment, it being alleged that the appropriation of the areas was not for a public use, but for the purpose of speculating in real estate.

Under the laws of Ohio this question could be raised only by injunction proceedings. Decrees in favor of the petitioner and the other complainants in the said actions for a permanent injunction against the appropriation were entered in the District Court and were affirmed by the Circuit Court of Appeals, 33 Fed. (2d) 242, and by the United States Supreme Court, 281 U.S. 439, the reported decisions thereof being hereby made a part of this stipulation.

For the prosecution of said injunction proceedings and for services in said three courts the petitioner incurred attorney fees in the amount of $7,500, which he paid in 1930. The petitioner claimed the attorney fees as a deduction in his income tax return for the year 1930.

Respondent's theory is that the fees paid by petitioner for legal services in opposing the attempted taking of his land were capital expenditures and therefore not deductible.

We note first that the petitioner was successful in his opposition. He won his case in every court, including the Supreme Court of the United States, and was thus sustained in his position that the condemnation in question was illegal and violative of his constitutional rights. We next note that the litigation was not in defense of title or to perfect petitioner's title. It was to enjoin the taking of the land itself by the exercise of the power of condemnation, a right of sovereignty. Petitioner's title was assumed to be valid and the effectiveness of the condemnation, if successful, would have depended on the validity of petitioner's title. The decision of the Supreme Court perpetually enjoining the condemnation did not add one cent to the value of petitioner's property, nor did it add any rights of title. We are unable to follow respondent in arguing that the expense so incurred was a capital expenditure.

A condemnation is in fact an involuntary sale of property, the price being fixed by the court having jurisdiction. This concept underlies the whole theory of taxation of profit acquired in such proceedings. See sections 112 (f) and 113 (a) (10) of the Revenue Act of 1928 and comparable sections of other acts.

The injunction proceeding was a proper and effective means of resisting an unlawful attempt to compel petitioner to sell part of his property to the city. Petitioner did not contest the condemnation of the 25-foot strip for street widening. What petitioner did resist was the attempt to take additional or excess land not required for the public use. And in this he was sustained.

Generally speaking, where one is engaged in business, the necessary expense of maintenance and protection of the property used in the business constitutes a proper deduction from income.

It is stipulated that petitioner was " engaged in the business of real estate and investments for his own account." Basic in this business was the ownership, possession, and availability for advantageous development or disposition of the property in question. Being so engaged, it is undoubted that petitioner could have employed a watchman to remain on this very property to prevent unlawful entry or misuse by trespassers. An expenditure for such a purpose would have been an ordinary and necessary expense and allowable as such. Similarly, it would seem that if court action were necessary to oust a trespasser and a lawyer were employed to eject him, the fee paid would be a comparable expense of the business. Such an expense " is directly connected with, or, as otherwise stated (*Sarah Backer*, 1 B.T.A. 214, 216), proximately resulted from, his business." *Kornhauser* v. *United States*, 276 U.S. 145.

In *Carlos W. Munson*, 18 B.T.A. 232, we held that expenses incurred by employing private detectives to guard farm property where serious labor trouble had occurred were deductible as business expenses of running a farm and trucking business.

In *Lena G. Hill*, 8 B.T.A. 1159, we held that attorney fees paid in defending foreclosure suits brought by lienors to obtain payment for material used in improving petitioner's property were deductible as ordinary and necessary expenses of conducting a hotel business.

Again, in *Samuel D. Leidesdorf*, 26 B.T.A. 881, we approved the deduction of attorney fees incurred by a man engaged in the real estate business in defending a suit which threatened his full enjoyment of certain stock. In the instant case the condemnation threatened to deprive petitioner permanently of a valuable business asset.

In *H. M. Howard*, 22 B.T.A. 375, attorney fees paid in connection with effecting a compromise of litigation, the same growing out of

his business, were held deductible. And in *E. L. Bruce Co.*, 19 B.T.A. 777, we approved the allowance of attorney fees incurred as a result of litigation over taxes.

Without further citation of authority it is sufficient for the purposes of this opinion to state that in our judgment the expenditure of $7,500 was directly related and incident to petitioner's real estate and investment business. It was an ordinary and necessary expense of such business and was properly deductible in the taxable year.

*Decision will be entered for the petitioner.*