BLAINE M. AND VIRGINIA C. MADDEN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5159–70. Filed January 24, 1972.

Blaine M. Madden, pro se.
*Thomas N. Tomashek*, for the respondent.

DAWSON, *Judge:* Respondent determined the following deficiencies in the petitioners' Federal income taxes:

| Taxable year ended | Deficiency |
|---|---|
| June 30, 1965 | $137.00 |
| June 30, 1966 | 1,529.57 |
| June 30, 1967 | 369.00 |
| June 30, 1968 | 322.00 |

Various issues have been conceded by the parties. The only issue presented for our decision is whether amounts paid by petitioners during the taxable years 1966 and 1967 in unsuccessfully attempting to limit the condemnation of their real property to the taking of a flowage easement rather than a fee simple interest constitute nondeductible capital expenditures or deductible expenses under either section 162 or section 212.[1]

### FINDINGS OF FACT

The parties have stipulated certain facts which are incorporated herein by this reference.

Blaine M. Madden and Virginia C. Madden (herein called petitioners) are husband and wife whose legal residence was Brewster, Wash., when they filed their petition in this proceeding.

Petitioners filed joint Federal income tax returns for the taxable years ended June 30, 1965, through June 30, 1968, with the district director of internal revenue at Tacoma, Wash. For the taxable year ended June 30, 1965, petitioners timely filed an amended return and a claim for refund. The sum of $511.40, representing income tax of $479.60 and statutory interest of $31.80, was refunded to petitioners on November 30, 1966.

Blaine M. Madden (herein called petitioner) is a commercial orchardist who owns and operates an orchard near Brewster, Wash.

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

During the years in question the petitioner raised both apples and peaches. A tract of the orchard had been set aside prior to December 31, 1965, by the petitioners as a possible future homesite and was deeded to petitioner's wife, Virginia C. Madden.

On January 12, 1966, a petition in condemnation (Civil Action No. 16897) was filed in the Washington State Superior Court for Okanogan County by Public Utility District No. 1 of Douglas County, Wash. (hereinafter called P.U.D.), against the petitioners herein and others. P.U.D. sought to obtain fee simple ownership of certain property, including the "homesite" property of the petitioners, for use as reservoir area for the Wells Hydroelectric Dam Project.

Prior to the institution of the condemnation proceeding in the Superior Court for Okanogan County, the petitioner had subdivided a part of his property into lots which he valued at less than $3,000 each. He had deeded lots to each of his five children and one to his wife, Virginia. These were gifts. Except for the lot which was deeded to his wife, the subdivided area was shoreland which was not then part of the petitioner's orchard. The shoreland property deeded to his children was held primarily for the future expansion of the orchard and, secondarily, for possible sale as recreational property. The property deeded to the wife was an integral part of the orchard and was in production when the condemnation proceeding was instituted.

Petitioner subdivided the shoreland property into lots in order to obtain greater compensation from P.U.D. when the lots were condemned.

Pursuant to stipulation the condemnation proceeding involving the "homesite" property was consolidated with two other similar proceedings, namely Civil Action Nos. 16839 and 16911.

In the use and necessity hearings of the condemnation proceeding, the petitioners herein contended that P.U.D. was entitled to only a flowage easement in the "homesite" property. The Superior Court's ruling was favorable to the petitioners, and P.U.D. was limited to flowage easement in the property rather than a fee simple interest. The Superior Court's order adjudicating public use and necessity was filed on June 24, 1966.

P.U.D. sought review of the Superior Court's decision by the Washington State Supreme Court. By a decision filed on December 14, 1966, the Supreme Court reversed the Superior Court and determined that P.U.D. was entitled to a fee simple interest in the petitioners' property. The decision became final on March 8, 1967. The decision is reported as *Public Utility District No. 1 of Douglas County* v. *Cooper*, 69 Wash. 2d 909, 421 P. 2d 1002 (1966). On remand, the Superior Court entered an order favorable to P.U.D. in accordance with a stipulation of the parties.

During the time the Superior Court's decision in petitioners' case was on appeal to the Washington State Supreme Court, P.U.D. instituted a condemnation proceeding in the U.S. District Court for the Eastern District of Washington, Northern Division, to acquire 13 acres of the petitioner's orchard. In that proceeding the petitioners contended that P.U.D. was entitled to only a flowage easement in the property, but the court's order adjudicating public use and necessity granted P.U.D. a fee simple interest therein.

Petitioners' legal expenses incurred in connection with the use and necessity hearings of the condemnation proceeding in the State courts amounted to $5,299.21 for the taxable year ended June 30, 1966. Petitioners' legal expenses incurred in connection with the use and necessity hearings of the condemnation proceedings in both the State and Federal courts amounted to $4,562 for the taxable year ended June 30, 1967. These amounts did not relate to negotiations on behalf of the petitioners herein with respect to the amount of compensation to be paid by P.U.D. for the condemned property. Petitioners deducted these amounts on their Federal income tax returns as current expenses.

Petitioners retained legal counsel to ascertain the value of the condemned property and to negotiate with P.U.D. concerning the compensation to be paid for the property. The cost to the petitioners of appraisal and legal services was $9,125. This sum expended for negotiation and ascertainment of purchase price was added to the basis of the condemned property and is not at issue in this case.

None of the legal expenses involved in this case are attributable to the shoreland property deeded to the five children. In the State court proceedings the only property in which petitioners sought to limit the taking to a flowage easement was the "homesite" property, i.e., the portion of the orchard deeded to Virginia C. Madden. The only legal expenses involving the shoreland property were those connected with the $9,125 negotiation expense which was capitalized by petitioners.

Petitioners reported the receipt of $84,000 on their Federal income tax return for the year ended June 30, 1967, representing compensation received from P.U.D. for the condemned property. They believed that the compensation from P.U.D. would be the same whether P.U.D. were granted fee simple title to the condemned property or merely a flowage easement.

During the taxable year ended June 30, 1967, the petitioners were assessed $500 by Mid-Columbia Planners, an organization of landowners in the Brewster-Pateros area of which the petitioner is a member. Petitioners deducted this amount on their Federal income tax return as a current expense. The $500 was used by Mid-Columbia Planners to pay a portion of the legal expenses incurred by parties contesting P.U.D.'s condemnation in fee simple of certain other prop-

erty similarly situated to that of the petitioners herein. The decision on appeal in that case is reported as *Chapman* v. *Public Utility District No. 1 of Douglas Co., Wash.*, 367 F. 2d 163 (C.A. 9, 1966). In that case the Court of Appeals held that P.U.D. was entitled to a fee simple interest in the land which it sought to condemn rather than merely a flowage easement.

Petitioners paid $500 to Mid-Columbia Planners during the taxable year ended June 30, 1967, as legal fees in the belief that the outcome of the *Chapman* case would have an effect on their own property.

In his notice of deficiency dated May 18, 1970, respondent determined that the claimed deductions for legal expenses of $5,299.21 in the taxable year ended June 30, 1966, and $5,062 in the taxable year ended June 30, 1967, should be disallowed because they constituted capital expenditures.

## OPINION

At the outset we observe that the respondent has tried to inject a "personal" versus "business" property issue into this case by attempting to attribute some of the disputed legal expenses to the shoreland property deeded to petitioners' children. The record shows, however, that the State court proceedings never sought to limit the taking of the shoreland property to a flowage easement. As our findings of fact reflect, the only legal expenses incurred in connection with the taking of such property were those pertaining to the negotiation of the sales price and were properly capitalized by the petitioners.

Respondent also urges us to deny any legal expense deduction for that portion of the orchard property deeded by petitioner to his wife because of their hopes eventually to build a home thereon. The record shows, however, that after the transfer such portion of the orchard property continued to be used by petitioners in conducting their commercial orchard business. Consequently, we think the legal expenses attributable to that portion of the orchard property should be treated in the same manner as those attributable to the remainder of the orchard property.

Petitioners contend that the legal expenses incurred in opposing the taking of a fee simple interest in their orchard property are properly deductible under section 162(a), which allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. They rely on our opinion in *L. B. Reakirt*, 29 B.T.A. 1296 (1934), affirmed per curiam 84 F. 2d 996 (C.A. 6, 1936). Alternatively, petitioners assert that the legal expenses in question are deductible under section 212(2) because they "related to the protection or preservation of income-producing prop-

erty," citing *Ruoff* v. *Commissioner*, 277 F. 2d 222 (C.A. 3, 1960), reversing 30 T.C. 204 (1958).

To the contrary, respondent contends that the legal fees relating to the condemnation of the orchard property do not come within the ambit of deductibility provided by either section 162(a) or section 212. His arguments are three-pronged.

First, he urges us to apply the rationale of *United States* v. *Gilmore*, 372 U.S. 39 (1963), that the origin and character of the claim with respect to which an expense is incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense is "business" or "personal." The characterization as business or personal, he says, depends on whether the claim arose directly in connection with the taxpayer's profit-seeking activities and does not depend on the consequences that might result to the taxpayer's income-producing property from failure to defeat the claim. From this premise it is argued that the claim with respect to which a portion of the petitioners' legal expenses were incurred, namely, the condemnation of the orchard property in fee simple, did not stem from any income-producing activity of the petitioners. He asserts that the evidence shows that petitioners' expenses for legal fees arose solely as a result of their dislike of the consequences of the proposed condemnation proceedings, and therefore had no relationship to the business or personal nature of the property.

Respondent's second argument is that the legal fees expended by petitioners are in the nature of capital outlays incurred in effectuating the sale of their property to P.U.D. Respondent says that there is no sound reason for distinguishing between the treatment to be accorded the legal fees expended for negotiation of the compensation for the property taken and the treatment of the legal fees expended in attempting to determine the extent of the property interest to be taken. A condemnation is much like a sale of property despite the fact that the owner parts with his property involuntarily. Both price and subject matter or quantity are among the necessary terms of a sale, and the quantity of property to be taken would be an essential element of the proposed transaction between the petitioners and P.U.D. Thus, he emphasizes that it is logical to consider the condemnation proceedings in the instant case to be in the nature of negotiating sessions to determine the quantity (fee simple or flowage easement) of the property which was to be purchased by P.U.D. In support of this view respondent relies heavily on *Spangler* v. *Commissioner*, 323 F. 2d 913 (C.A. 9, 1963), affirming a Memorandum Opinion of this Court. In *Spangler* the taxpayer was fraudulently induced to sell certain corporate stock. She brought suit against the wrongdoers and recovered (1) an amount equal to quarterly dividends issued on taxpayer's stock

after the fraudulent sale, (2) an amount equal to a liquidating payment issued on her stock less the consideration received by taxpayer in the fraudulent sale, and (3) interest on each quarterly dividend and the net liquidating payment from the dates of issuance. The Court of Appeals concluded that the gist of the controversy in the taxpayer's suit had been the ownership of the stock, and accordingly the costs of the litigation were capital expenditures not deductible from ordinary income. In so concluding, it said at page 921:

> Moreover, the result would not be changed if the litigation were viewed as action taken to effectuate the initial sale of the stock to the wrongdoers, though on revised terms. Costs connected with the disposition of a capital asset are also capital expenditures to be added to taxpayer's basis, or offset against the sales price, rather than expenses deductible from ordinary income.[21] [Footnote omitted.]

Thus, respondent asserts that if the rationale of *Spangler* is applied here, it follows that the legal fees expended by petitioners in attempting to limit the extent of the condemnation of the property constitute costs connected with the disposition thereof and, as such, they are not deductible but must be capitalized. See *Williams* v. *Burnet*, 59 F. 2d 357 (C.A.D.C. 1932), affirming 21 B.T.A. 109 (1930); *Isaac G. Johnson & Co.* v. *United States*, 149 F.2d 851 (C.A. 2, 1945).

Respondent's third contention is that the legal fees in question were incurred by petitioners to defend title to their property and therefore must be capitalized. See sec. 1.263(a)–2(c) and sec. 1.212–1(k), Income Tax Regs.; *William F. Wallace, Sr.*, 56 T.C. 624 (1971); *J. Bryant Kasey*, 54 T.C. 1642 (1970); *Midco Oil Corporation*, 20 T.C. 587 (1953); *James C. Coughlin*, 3 T.C. 420 (1944); and *United States* v. *Wheeler*, 311 F.2d 60 (C.A. 5, 1962). He argues that support for such a characterization of the payments is found in the legal principle that title to property or ownership of property consists of a number of rights in such property, prominent among which is the right of possession. Then he points out that in the condemnation proceedings involved in this case the petitioners were attempting to defend their ownership and possession of their property against P.U.D.'s proposed taking; and that petitioners admittedly were attempting to retain fee simple ownership of their property while granting P.U.D. only a flowage easement. He urges that while a condemnation proceeding may not appear to involve a "defense of title" in the strictest sense, this Court should take a broader view of the concept of defense of title which would encompass the situation involved herein.

We realize the strength of respondent's arguments, and perhaps if we were writing on a clean slate we would accept them and hold against the petitioners. But we are not writing on a clean slate. Over 37

years ago this Court was confronted in *L. B. Reakirt, supra*, with the same issue presented in this case under similar circumstances. In that case the City of Cincinnati had lawfully condemned a 25-foot strip of the taxpayer's land which was used in his real estate business, and had attempted to take an additional adjacent area by "excess condemnation." The taxpayer successfully resisted the "excess condemnation" and the dispute arose out of the Commissioner's disallowance of the claimed business expense deduction of his attorneys' fees. There, as here, the Commissioner argued that the legal fees should be capitalized. In allowing the deduction of the attorneys' fees as ordinary and necessary expenses of the business, this Court said at pages 1297 and 1298:

We next note that the litigation was not in defense of title or to perfect petitioner's title. It was to enjoin the taking of the land itself by the exercise of the power of condemnation, a right of sovereignty. Petitioner's title was assumed to be valid and the effectiveness of the condemnation, if successful, would have depended on the validity of petitioner's title. The decision of the Supreme Court perpetually enjoining the condemnation did not add one cent to the value of petitioner's property, nor did it add any rights of title. We are unable to follow respondent in arguing that the expense so incurred was a capital expenditure.

\* \* \* \* \* \* \*

It is stipulated that petitioner was "engaged in the business of real estate and investments for his own account." Basic in this business was the ownership, possession, and availability for advantageous development or disposition of the property in question. Being so engaged, it is undoubted that petitioner could have employed a watchman to remain on this very property to prevent unlawful entry or misuse by trespassers. An expenditure for such a purpose would have been an ordinary and necessary expense and allowable as such. Similarly, it would seem that if court action were necessary to oust a trespasser and a lawyer were employed to eject him, the fee paid would be a comparable expense of the business. Such an expense "is directly connected with, or, as otherwise stated (*Sarah Backer*, 1 B.T.A. 214, 216), proximately resulted from, his business." *Kornhauser* v. *United States*, 276 U.S. 145.

In substance and in principle the *Reakirt* opinion is controlling in this case. In our judgment there is no sufficient ground upon which *Reakirt* can be distinguished, and at this stage it is beyond our pioneering spirit to relegate it to the museum of legal history. Accordingly, we follow it and conclude that the petitioners are entitled to deduct the legal fees in question as an ordinary and necessary business expense. As in *Reakirt*, their primary purpose was to retain a fee simple interest in all their orchard property and to fight the threatened condemnation which sought to deprive them permanently of a valuable business asset—the land on which they grew their apples and peaches for sale to their customers. See also *Memphis Memorial Park*, 28 B.T.A. 1037 (1933), affirmed per curiam 84 F. 2d 1008 (C.A. 6, 1936), which allowed the deduction of legal expenses incurred in defending a suit to

enjoin the use of land for cemetery purposes; and Rev. Rul. 60–261, 1960–2 C.B. 42, stating that where legal expenses are for "a business purpose, such as the use and enjoyment or operation of a business asset already owned, the amount thereof would be deductible as a business expense."

The many cases involving expenses to defend one's property against claims of others are indeed diffuse to an almost maddening degree. See Winokur, "Deductibility of Legal and Other Professional Fees," 1963 So. Calif. Tax Inst. 483–492; and *Brown* v. *Commissioner*, 215 F. 2d 697, 699 (C.A. 5, 1954). Faced with what Justice Frankfurter termed "dialectic conflicts," *Trust of Bingham* v. *Commissioner*, 325 U.S. 365, 378, in this confusing and troublesome area, we prefer to adhere to a controlling precedent rather than veer off in a new direction.

Having determined that the legal fees are deductible as business expenses under section 162(a), we find it unnecessary to consider petitioners' alternative position that they are deductible under section 212(2) as expenses for the "conservation" of property held for the production of income.

To reflect the concessions of the parties on other issues,

*Decision will be entered under Rule 50.*