WARNER M. SOELLING AND PATRICIA SOELLING, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10792–75.     Filed September 26, 1978.

*Arthur R. Collins*, for the petitioners.
*William Bonano* and *George Mac Vogelei*, for the respondent.

STERRETT, *Judge:* Respondent, on September 19, 1975, issued a statutory notice of deficiency in which he determined a deficiency in petitioners' Federal income tax for the taxable year ended December 31, 1971, in the amount of $8,720. After concessions by the parties the following two issues remain for our determination: (1) Whether amounts expended for professional fees in connection with condemnation proceeds and attempted rezoning are currently deductible under section 212, I.R.C. 1954, and (2) the apportionment of basis for purposes of calculating the capital gain realized as a result of the condemnation award.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioners, Warner M. Soelling and Patricia Soelling, hus-

band and wife, resided in Modesto, Calif., at the time the petition herein was filed. Petitioners filed a joint Federal income tax return for the calendar year 1971. Patricia Soelling is a party to this action solely because she joined in the filing of this return, and accordingly Warner M. Soelling will hereinafter be referred to as petitioner.

In 1965 the county of Stanislaus issued a general plan for the zoning of certain property outside the town of Modesto, Calif. This general plan envisioned a potential rezoning of property from agricultural-rural to commercial at certain specified intersections. These areas were designated by the placing of red dots on the general plan map. In 1968 petitioner acquired 13.031 acres of property within the jurisdiction of a red dot zone. At the time of acquisition the property possessed the right of access to the abutting Oakdale Road on the east side of the property. An unpaved road maintained by the Modesto Irrigation District ran east to west within the northern boundary of the property. During the years 1969 and 1970 the county of Stanislaus approached petitioner concerning the acquisition of a portion of his property for roadway purposes. Petitioner offered to dedicate the property to the county if given assurance that the remaining portion of the property would have access to the new roadway. However, the county of Stanislaus refused the offer of dedication.

On August 6, 1969, the county of Stanislaus, Calif., filed a complaint in eminent domain condemning a portion of petitioner's property. Upon learning of the eminent domain proceedings petitioner hired an appraiser to evaluate the import of the condemnation complaint. As a result of such evaluation petitioner believed that the condemnation would cause his property to be landlocked. He therefore contested the condemnation. To do so he hired a condemnation attorney for the purpose of protecting access to the property. As a result of various maneuvers by petitioner the complaint was amended, striking all reference to access. Petitioner proceeded with the case which was tried in the Superior Court of Stanislaus County beginning February 1, 1971. At the condemnation trial the petitioner stated that he was not interested in condemnation proceeds. However, he did hope to exchange an award for access to the prospective roadway. Therefore, he asked for the maximum possible proceeds. Payment of a judgment was made to

petitioner. The jury awarded petitioner $18,000 for severance damages, $23,000 as a condemnation award, and $4,300 in interest. Petitioner incurred and paid attorneys' fees of $4,445 and appraisal fees of $1,025 in connection with this condemnation hearing.

During 1971 petitioner engaged an attorney to prepare and present an application for a zoning reclassification and to obtain clarification with respect to the status of the property's access after condemnation. For these services petitioner incurred and paid legal fees in 1971 of $5,702.

Petitioner also hired a civil engineer to do site plans in connection with the rezoning. Petitioner incurred and paid engineering fees of $526 in 1971 for such services.

Petitioner deducted the appraisal fee, attorneys' fees, and engineering fee as section 212, I.R.C. 1954, expenses. Respondent characterized these deductions as capital in nature and disallowed them in full.

## OPINION

### Issue 1. Professional Fees

Petitioner based his deduction of professional fees incurred in 1971 with respect to the condemnation proceeds and attempts to rezone the property on section 212.[1] That section, in pertinent part, allows as deductions ordinary and necessary expenses paid for the conservation of property held for the production of income. Petitioner's brief implies that, in any case, such expenses should be allowed under section 162(a) as ordinary and necessary expenses of carrying on a trade or business.

These expenditures were made in connection with condemnation proceedings and attempts to rezone the property. Petitioner presented no evidence to the effect that the property was income producing. In fact, he testified that he had no business activity with respect to the land. He neither sold crops nor received income from the use of the property and he received no royalty payments for the extraction of minerals.[2]

The Modesto general plan indicated that the property was located on an intersection that showed potential for rezoning. The plan proposed that one of the four corners on the

---

[1]Sec. 212(2).

[2]Apparently the property was farmed by the Future Farmers of America.

intersection might be rezoned neighborhood commercial. Although petitioner believed his corner was the only one of the four suitable for development, there was no guarantee that any corner on the intersection would actually be rezoned.

Petitioner referred to the purpose behind his acquisition of the property in terms of "eventual retirement" income, "speculative potential," and "income producing potential" in the "near future." On brief he claims the property was "held for *investment* and income producing *potential.*" (Emphasis added.)

Based on these facts we are unable to find that petitioner was engaged in a section 162 trade or business with respect to this property. However, section 1.212–1(b) Income Tax Regs., has defined the word "income" for purposes of the section 212 deduction of expenses paid for the conservation of property held for the production of income to include "gains from the disposition of property." There is no question that the property was purchased as an investment. Therefore, petitioner has leapt the first hurdle in proving the deductibility of his expenditures.

It is the second hurdle that petitioner fails to surmount. Section 212 only provides for the deduction of "ordinary and necessary expenses." Thus, an inquiry must be made into the origin and character of the claim giving rise to the expenditure. *Woodward v. Commissioner,* 397 U.S. 572, 577 (1970).

Petitioner's expenditures arose in connection with a condemnation suit and an attempt to rezone certain property. He expended the sums in issue not with respect to an operating business, but in an attempt to increase the value of the property. When an increase of the value of property is the cause of an expenditure, there exists an inherent relationship between the expenditures and the ultimate sale of land. *Madden v. Commissioner,* 514 F.2d 1149, 1151 (9th Cir. 1975), revg. 57 T.C. 513 (1972).

In *Madden* the Ninth Circuit clarified the law in this area basing its opinion on those of the Supreme Court in *Woodward v. Commissioner, supra,* and *United States v. Gilmore,* 372 U.S. 39 (1963). The cumulative result of these opinions places a difficult burden on the taxpayer to prove that a section 212 expense is ordinary and necessary rather than capital in nature when incurred in connection with an investment, be it an acquisition or a disposition thereof. The facts and circumstances herein are indistinguishable from those in *Madden.* However, in our

decision in *Madden* we applied the primary purpose test, rejected by *Woodward* and the Ninth Circuit in their reversal of *Madden,* rather than the origin and character test herein employed. We will, therefore, no longer follow our decision in that case, but instead we comport with the Ninth Circuit's decision.[3]

We find the amounts spent by petitioner in connection with both the condemnation proceedings and the attempt to rezone the property held for investment purposes to be capital expenditures not currently deductible under section 212 because the origin and character of the activity from which these expenditures derived were capital in nature. *Madden v. Commissioner, supra; Galt v. Commissioner,* 19 T.C. 892, 910 (1953), affd. in part and revd. in part 216 F.2d 41 (7th Cir. 1954), cert. denied 348 U.S. 951 (1955). See also *Bradford v. Commissioner,* 70 T.C. 584 (1978).

## Issue 2. Allocation of Basis

In 1968 petitioner acquired 13.031 acres for $65,000. Of the 13.031 acres, 1.108 were subject to an easement belonging to the Modesto Irrigation District and .199 were subject to an easement for Oakdale Road. The condemnation suit took 2.295 acres, excepting therefrom the land subject to such easements. The jury awarded $23,000, $10,000 per acre,[4] for the property taken and $18,000 for severance damages.

Petitioner contends that the apportionment of basis should reflect severance damages resulting in a lowered basis for the property retained. His contention overlooks the timing of the apportionment of basis. The critical date for determining cost basis is the date of acquisition. *Ayling v. Commissioner,* 32 T.C. 704, 710 (1959).

Petitioner further contends that the per-acre basis of the property taken should exceed the per-acre basis of the property retained due to the loss of frontage on Oakdale Road. Petitioner lost 90 feet (22 percent) of his original 418.30 feet of frontage on

---

[3]*Madden v. Commissioner,* 514 F.2d 1149, 1151 (9th Cir. 1975), revg. 57 T.C. 513 (1972), relies heavily on *Reakirt v. Commissioner,* 29 B.T.A. 1296 (1934), affd. per curiam 84 F.2d 996 (6th Cir. 1936). Both *Madden* and *Reakirt* used the "primary purpose test" as determinative of deductibility. Therefore, our holding that the proper test is the "origin and character" of the expenditure means we will also no longer follow *Reakirt.*

[4]Both petitioner and his appraiser valued the take at this figure.

that road. He lost 2.295 acres (20 percent) of his 11.724 usable acres of land. Thus his loss of frontage is roughly proportionate to his loss of acreage. For this reason we find it unnecessary to determine the exact value of frontage property when compared to nonfrontage property for purposes of apportioning basis. Compare *Fairfield Plaza, Inc. v. Commissioner,* 39 T.C. 706, 712 (1963).

Because the easements covering a total of 1.307 acres existed at the time of acquisition, it would be inequitable to apportion any basis to these encumbered acres. We therefore find a per-acre cost basis in the property taken to be $5,544.18.

Respondent has correctly added to this basis the amounts expended by petitioner for legal and appraisal fees in connection with the condemnation hearing. In so doing it was necessary to apportion such costs between the total damages awarded. The only measure available by which to apportion the cost is the apportionment made in the jury award. The total award was $41,000 plus interest. Of this amount $23,000 was a condemnation award and $18,000 was severence damages. Fifty-six percent of the attorneys' fees ($23,000 ÷ $41,000) is attributable to the condemnation award. Therefore, the basis of the property taken must be increased in the amount of $3,063.20 due to expenditures made in connection with the condemnation hearing.

The amounts expended in connection with the rezoning of the retained property and the fees attributable to the severance damages will increase the basis of the retained property.

*Decision will be entered for the respondent.*

Reviewed by the Court.