RICHARD H. DAVIS AND DOROTHY D. DAVIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; GRANT C. DAVIS AND MARILYN DAVIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Davis v. Commissioner
Docket Nos. 2870-80, 2871-80.
United States Tax Court
T.C. Memo 1983-160; 1983 Tax Ct. Memo LEXIS 629; 45 T.C.M. (CCH) 1070; T.C.M. (RIA) 83160; March 23, 1983; As Amended May 2, 1983 Julian R. Sayre, for the petitioners. Martha Combellick, for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes in these consolidated cases: Petitioners
Year
Deficiency
Richard H. Davis and
1976
$1,856
Dorothy D. Davis
1977
11,448
Grant C. Davis and
1976
1,441
Marilyn Davis
1977
2,517
In answers filed by the respondent, increased tax deficiencies were claimed for 1977. For Richard H. Davis and Dorothy Davis, respondent claimed an increased tax deficiency in the amount of $8,365, [1] resulting in a claimed deficiency of $19,813 for 1977. For Grant C. Davis and Marilyn Davis, respondent claimed an increased tax deficiency of $1,305, resulting in a claimed deficiency of $3,822 for the year 1977. The issue for our determination is whether legal fees and other costs paid by petitioners' partnership during 1976 and 1977 are business expenses deductible under sections *631 162[2] or 212, or are capital expenditures. This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners Richard H. Davis and Dorothy D. Davis were husband and wife whose legal residence when their petition was filed was Tucson, Arizona. Their Federal income tax returns for 1976 and 1977 were timely filed with the Office of the Internal Revenue Service at Ogden, Utah. Petitioners Grant C. Davis and Marilyn Davis were husband and wife whose legal residence was in Tucson, Arizona when they filed their petition herein. Their Federal income tax returns for 1976 and 1977 were timely filed with the Office of the Internal Revenue Service at Ogden, Utah. Petitioners Richard H. Davis, Dorothy D. Davis, Grant C. Davis, and Marilyn Davis (hereinafter referred to as petitioners) collectively own all the interest in the capital and profits of Camino Del Manana Estates, a general partnership *632 (hereinafter referred to as the partnership). Richard H. Davis and Dorothy Davis own an 80 percent interest in the partnership, and Grant C. Davis and Marilyn Davis own a 20 percent interest. The partnership timely filed partnership returns for the taxable years ending December 31, 1976 and December 31, 1977. The partnership was formed on February 1, 1973 for the purpose of subdividing portions of the partnership property to be rezoned into trailer home sites. The Joint Venture Agreement provided, in part, that the purpose of the venture would be to: * * * acquire by purchase * * * unimproved real property in Pima County, Arizona. The Joint Venture will install all subdivision improvements therein which will convert all of the sites located therein to fully developed Trailer Home Sites which will then be sold. In 1973 petitioners contributed land to the partnership. The land was located in Pima County, Arizona and was zoned as "general rural" (GR). The county zoning plan for Pima County defined GR zoning as an interim, nonpermanent classification to be changed when the need for an increase in intensity of land development or a change in the permitted uses occurred, or *633 when land was to be subdivided. GR zoning permitted residential use on commercial acre parcels. The rezoning process began in January, 1972. The law office of Schorr and Karp, P.C. (Schorr) was engaged to conduct the rezoning of the land to zoning classifications determined appropriate to the contemplated uses. The land was to be rezoned from GR to "suburban homestead" (SH) and "single residence" (CR-1) zoning classifications. The Pima County Board of Supervisors (hereinafter referred to as "County Board") gave conditional acceptance to petitioners' rezoning application on November 21, 1972. Petitioners were given several conditions to meet within three years, although this time was eventually extended until January 1976. [3] The final fee charged by Schorr for representation in 1972 through the conditional rezoning process was $3,500. *634 Petitioners' partnership incurred engineering and other expenses in connection with its compliance activities which were capitalized by the partnership. In accordance with the County Board requirement that petitioners record an "acceptable plat" to provide for "rights of way for roads and drainage," a request for final approval of the subdivision plats, which had been approved by the necessary county departments, including the County Planning and Zoning Department, was submitted to the County Board. The County Board voted to deny approval of the plats. The partnership's first litigation expense was incurred when it protested this denial. On November 18, 1975, it instituted a special action in the Superior Court of Pima County, Arizona against Pima County and against the County Board. On January 9, 1976, the Superior Court found for the County and the County Board. The partnership then filed a motion for a new trial. The Arizona Court of Appeals granted it an injunction of the expiration of the conditional rezoning (due to expire on January 21, 1976), pending the determination of the motion for a new trial and any appeals therefrom. The Superior Court granted the partnership's *635 motion for a new trial, and on March 2, 1976, found for the partnership. The County Board did not appeal this decision. On April 5, 1976, the County Board met and approved the final plats of the subdivision. The partnership's rezoning problems, however, did not end here. The partnership continued its attempt to gain the County Board's approval for its proposed rezoning. On April 13, 1976, the partnership wrote to the County Board to request that they pass an ordinance at the next Board meeting to rezone the property from GR to SH and CR-1. On April 15, 1976, the partnership was notified by letter that the Pima County Planning Department, a separate agency, had "no objection to the transmittal of an ordinance." The ordinance for rezoning the partnership's land was transmitted to the County Board on May 3, 1976. The County Board denied passage of this ordinance and on June 4, 1976, the zoning inspector informed the partnership by letter that the partnership would be denied building permits until the County Board passed the rezoning ordinance. The partnership appealed the zoning inspector's action to the County Board of Adjustment. On July 22, 1976, the Board of Adjustment *636 denied the appeal. On July 28, 1976, the partnership instituted a suit in the Superior Court of Arizona against Pima County, the County Board, the zoning inspector, and the County Board of Adjustment. In the complaint, it requested that the court find the County inversely condemned the land on an inverse eminent domain theory, and that it be awarded the value of the property as just compensation, plus damages and attorneys' fees. The partnership further alleged damages caused by delay in development, asked for declaratory judgment to permit it to use the property as if it had been rezoned, and requested the Court to order the county inspector to issue it building and other necessary permits. The Superior Court of Arizona entered Findings of Fact and Conclusions of Law in favor of the partnership on June 21, 1977, and an amendment to one Conclusion of Law on November 28, 1977. The amended conclusion provided that: Defendants' refusal to grant the rezoning, and to issue building permits, has caused plaintiffs consequential damages of at least $162,215, from November 1975 to date. Such damages were caused, in fact, by defendants' conduct and were foreseeable by defendants. *637 Nevertheless, the Court concludes as a matter of law that the plaintiffs are not entitled to compensation for those damages. Judgment drafted by Schorr, was entered by the Court on September 26, 1977, stating that the partnership had "a clear legal right to develop and use * * * [the land] as though an ordinance had been adopted rezoning the property to SH and CR-1." The Superior Court also stated that the partnership had the "legal right to receive building and all other permits necessary to develop and beneficially use" the land. Pima County appealed the Judgment of the Superior Court of Arizona to the Court of Appeals for Arizona. In Davis v. Pima County,121 Ariz. 343, 590 P.2d 459 (1978), cert. denied 442 U.S. 942 (1979), the Arizona Court of Appeals held that the partnership was not entitled to money damages for the County Board's wrongful refusal to rezone. The Court of Appeals cited the fact that the Superior Court did not find the County Board had acted in "bad faith." They stated that the partnership was not entitled to damages on either a theory of inverse eminent domain or a general tort theory. The court further stated that: *638 * * * though appellants established a "taking" if the board's action were not undone, this does not mean they are entitled to money damages. In zoning matters the board of supervisors exercises its legislative function.If the legislative body acts wrongfully in its legislative capacity the judicial remedy is the undoing of the wrongful legislation and not money damages. HFH, Ltd. v. Superior Court of Los Angeles County, 15 Cal.3d 508, 542 P.2d 237 (1975). The proper remedy when zoning is confiscatory is either to seek by declaratory judgment to invalidate the general zoning ordinance or to challenge the particular rezoning determination by means of a special action. Gold Run, Ltd. v. Board of County Commissioners, supra.
The trial court in its conclusions of law stated that the "conditional" rezoning created an implied contract. This theory is incorrect. The board of supervisors did not and cannot, expressly or impliedly, bargain away its legislative zoning powers. Andgar Associates, Inc. v. Board of Zoning Appeals, 30 App.Div.2d 672, 291 N.Y.S.2d 991 (1968). *639 The power to regulate land use through zoning ordinances is vested in municipal legislatures and they cannot bargain away this power. R. Anderson, 2 American Law of Zoning Sec. 9.21 (2nd ed. 1968). [590 P.2d at 461] The partnership filed a petition for review of the Court of Appeals opinion which was denied on January 31, 1979 by the Supreme Court of Arizona. It petitioned the Supreme Court of the United States for a writ of certiorari which also was denied. An Amended Judgment dated February 26, 1979 was entered in the Arizona Superior Court on March 7, 1979 giving effect to the Opinion of the Court of Appeals. Substantial costs were incurred by the partnership during the rezoning process and the related litigation. The costs are summarized below: Expert
Year
Legal Fees
Engineering Fees
Witness Fees
1976
[4] $20,421
1977
28,546
$8,250
[5] $7,660
*640 No physical improvements were made to the partnership property during the years 1976 and 1977. Petitioners contend that the litigation and related costs for the years 1976 and 1977 were ordinary and necessary expenses incurred in carrying on a trade or business activity and thus are deductible under section 162(a). Petitioners alternatively argue that litigation costs are deductible under section 212 as ordinary and necessary expenses incurred for the production of income and in the conservation and maintenance of property held for the production of income. Petitioners finally claim that at least the portion of litigation costs pertaining to the issue of damages should be deductible since, if collected, they would have been taxable as ordinary income. Respondent, on the other hand, argues that no expenses are deductible under section 162 because the partnership was not engaged in a trade or business during the taxable years 1976 and 1977. Respondent contends that the legal fees are nondeductible capital expenditures, paid by the partnership to obtain a rezoning ordinance, and therefore, neither section 162 nor section 212 permits a deduction for these expenses. Respondent *641 further claims that section 212 is not applicable to petitioners because they were operating as a partnership, and only individuals are entitled to the benefit of section 212. Finally, respondent contends that the damages portion of the litigation represented a claim for injury to capital and as such was not deductible. We agree with respondent that the expenses incurred by the partnership in connection with rezoning their land were not reductible during 1976 and 1977. Although petitioners treated as capital charges to the partnership the costs of legal representation, engineering, and compliance activities undertaken from November, 1972 through November, 1975, they claim that most of costs incurred in 1976 and 1977 for legal and expert witness fees were deductible trade or business expenses. They argue that the "origin and character" of the litigation during 1976 and 1977 was rooted in their business activities because if the County Board had not wrongly prevented the partnership from receiving a zoning ordinance, they would have been operating an active trade or business during those years. Petitioners thus contend that business activities of the partnership essentially had *642 begun before the litigation expenses at issue here were incurred. The origin and character of the claim is the standard used to determine whether the legal and related fees will be treated as capital or ordinary expenditures. Woodward v. Commissioner,397 U.S. 572, 577 (1970); United States v. Gilmore,372 U.S. 39 (1963); Madden v. Commissioner,514 F.2d 1149, 1151-52 (9th Cir. 1975), revg. 57 T.C. 513 (1972); Soelling v. Commissioner,70 T.C. 1052 (1978). Before we can determine whether the legal expenses had an origin in petitioners' business activities, we must find that the partnership was engaged in a trade or business during 1976 and 1977. If the trade or business of the partnership had not yet started during those years, then expenses cannot be characterized as expenses of "carrying on" a trade or business. Section 162(a); Deputy v. Du Pont,308 U.S. 488, 499 (1940) (Frankfurter, J., concurring); Richmond Television Corp. v. United States,345 F.2d 901 (4th Cir. 1965), *643 remanded on other grounds 382 U.S. 68 (1965) (per curiam); Madison Gas & Electric Co. v. Commissioner,72 T.C. 521 (1979), affd. 633 F.2d 512 (7th Cir. 1980). Petitioners contend that the partnership was in the trade or business of subdividing land for sale for residential purposes during 1976 and 1977, although it did no subdividing or selling during those years. They argue that because they took all steps required by them to prepare for starting their business before 1976, they no longer incurred "preoperating" expenses during 1976 and 1977. They claim that the Arizona Court judgment in the partnership's favor showed it had vested rights, as of the date it finished compliance activities, to use the property in the manner intended, and that but for the County Board's wrongful actions, it would have opened for business in 1976. Petitioners argue that if we find no business activity existed at the initial November 17, 1975 denial of the subdivision plats, we should pinpoint where, in the course of events, the origin and character of litigation could be held to have "shifted" from a nonbusiness to a business activity. *644 There is no precise test of when a trade or business begins. Whether a trade or business exists is a question of fact. Richmond Television Corp. v. United States,345 F.2d at 905; Ditunno v. Commissioner, 80 T.C.     (Feb. 7, 1983); Downs v. Commissioner,49 T.C. 533, 540 (1968); Koons v. Commissioner,35 T.C. 1092 (1961). [6]
Based on the facts and circumstances here, we find *645 that the partnership was not engaged in a trade or business of subdividing land for sale during 1976 and 1977. The partnership made no physical improvements to the property during 1976 and 1977. [7] Although petitioners contend the partnership would have done so but for the rezoning problems, they have not provided a sufficient basis for us to distinguish the rezoning litigation from events common to rezoning activities in general which are clearly capital in nature. [8]Soelling v. Commissioner,70 T.C. at 1056; Galt v. Commissioner,19 T.C. 892, 910 (1953), affd. in part and revd. in part 216 F.2d 41 (7th Cir. 1954), cert. denied 348 U.S. 951 (1955); accord Godfrey v. Commissioner,335 F.2d 82, 85 (6th Cir. 1964), affg. a Memorandum Opinion of this Court, cert. denied 379 U.S. 966 (1965); Chevy Chase Land Co. v. Commissioner,72 T.C. 481, 487-88 (1979). *646 Petitioners contend that even if we find the partnership was not engaged in business during 1976 and 1977, section 212 applies because expenses were incurred in the production of income, and were ordinary and necessary expenses under section 1.212-1(a)(2), Income Tax Regs. They argue that the legal costs were reasonable expenses related to the production of expected income and to the management and conservation of the property. Section 212 provides individuals a deduction for certain nonbusiness expenses. Petitioners intended to use their land for the partnership business. The expenses incurred by the partnership clearly were to result in a benefit that would last longer than a year and are capital in nature. Capital expenses are not deductible under section 212. See section 1.212-1(n), Income Tax Regs.; Ward v. Commissioner,20 T.C. 332, 344 (1953), affd. 224 F.2d 547 (9th Cir. 1955). [9]
*647 We find the "origin and character of the claim" in the litigation undertaken by petitioners and the partnership in 1976 and 1977 was preoperational, and concerned with obtaining rezoning of the partnership land from GR to SH and CR-1. See Woodward v. Commissioner,supra;United States v. Gilmore,supra;Soelling v. Commissioner,supra. Unlike Hoopengarner v. Commissioner, 80 T.C.    (Mar. 21, 1983), here the partnership costs were nonrecurring and not incurred within a specific time frame.They therefore must be capitalized under section 263 and are not currently deductible under sections 162 or 212. Finally, we cannot allow the partnership to deduct a portion of its legal fees and other costs because purportedly related to obtaining damages for lost profits. [10] Petitioners have not shown other than that they or the partnership sought damages for injury to capital items, and therefore, did not incur deductible expenses under sections 162 or 212. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. See Soelling v. Commissioner,supra. *648 Due to concessions, Decisions will be entered for respondent.
Footnotes
1. Due to a typographical error, respondent claimed an increased deficiency of $8,635 in his answer, but corrected this error on brief.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended, and in effect for the taxable years at issue, unless otherwise stated.↩
3. These conditions were: (1) Satisfaction of the County Engineer's drainage requirements; (2) Recording a covenant to the effect that the SH lots will not be split into lots less than 36,000 square feet; (3) Recording an acceptable plat that will provide for necessary rights of way for roads and drainage; (4) Completion of the requirements for a zoning ordinance within three (3) years from the date of approval by the Board of Supervisors; (5) A suitable arrangement with the Pima County Department of Sanitation regarding sanitary facilities; (6) Recording a covenant holding Pima County Harmless in the event of flooding; [and] (7) Planting buffers on the east and west sides of the subject property.↩
4. The parties agree that $675 of the legal fees and $25 of disbursements reflected on one of their receipts for legal fees incurred in 1976, and deducted as current business expensed by the partnership on its 1976 return, are attributable to preparation for and attendance at a hearing held on November 17, 1975 for plat approval, and thus are capital expenditures. ↩
5. Expert witness fees were incurred in connection with the suit commenced on July 26, 1976 in Superior Court.↩
6. Additionally, we generally have followed the guidelines in Richmond Television Corp. v. United States,345 F.2d at 907, which stated: * * * even though a taxpayer has made a firm decision to enter into business and over a considerable period of time spent money in preparation for entering that business, he still has not "engaged in carrying on any trade or business" within the intendment of section 162(a) until such time as the business has begun to function as a going concern and performed those activities for which it was organized. See, e.g., Haskins v. Commissioner,T.C. Memo. 1982-730; Kennedy v. Commissioner,T.C. Memo. 1973-15↩.
7. Petitioners argue that despite the lack of activity, the partnership should be considered an ongoing business by applying language from section 1.248-1(a)(3), Income Tax Regs., which suggests that in some cases "the acquisition of operating assets which are necessary to the type of business contemplated may constitute the beginning of business." We, however, decline petitioners' invitation to apply section 1.248-1(a)(3), Income Tax Regs., to their case. Section 248(a) provides an election for corporations to treat organizational expenditures as deferred expenses, and the regulation cited by petitioners creates guidelines for accomplishing this. We do not believe that this regulatory language should be translated into a context so foreign to it. Cf. New Colonial Ice Co. v. Helvering,292 U.S. 435↩ (1934). 8. Although petitioners assert the County Board's actions were unusual, it nevertheless seems clear that obtaining the judgment of the court was a necessary preoperating expense in petitioners' case. This is unlike the situation cited by petitioner where a municipal ordinance prevented a business that had been in operation for several years from continuing operation. See Rev. Rul. 78-389, 1978-2 C.B. 126. In this case, we have not found that petitioners' business was an ongoing one at the time the expenses were incurred. Furthermore, although petitioners argue that the origin and character of the claim was not the protection of a capital asset or obtaining permanent improvements since they had "vested rights" to the rezoning, still it was necessary for them to litigate to obtain the rezoning, and they could not start their business activities before rezoning was accomplished.↩
9. See also Graybeal v. Commissioner,T.C. Memo. 1979-506. Although apparently precluded by sec. 1.702-1(a)(8), Income Tax Regs., at this time we need not reach respondent's contention that these expenses are not deductible under section 212↩ because they were incurred for the benefit of and by the partnership.
10. For this argument, petitioners refer to their claims made in the original Superior Court action.The Arizona Court of Appeals reversed the portion of the Superior Court's judgment relating to the award of attorneys fees, holding that petitioners' sole remedy was the undoing of the legislation and stating that a money damage award was an inappropriate remedy for an invalid zoning ordinance.↩