[No. 29977. Department One. March 4, 1947.]

WILLIAM CODE et al., *Appellants*, v. AGNES R. LONDON, *Respondent.*[1]

'Reported in 178. P. (2d) 293.

*Royal & Abbott,* for appellants.

*Griffin, Gershon & Stark,* for respondent.

SIMPSON, J.—The present case involves the right to claim a homestead. June 28, 1945, plaintiff William Code obtained a judgment after trial against defendant, Agnes R. London, in the sum of $505.10. Some time thereafter, plaintiff caused a writ of execution to issue by which he sought to have the real property belonging to defendant, sold in satisfaction of the judgment. October 31, 1945, the trial court issued its temporary restraining and show cause order, based upon the showing that defendant had filed a declaration seeking a homestead right in the property sought to be sold on execution. Upon return of the show cause order, a trial was had, as a result of which the court entered a permanent restraining order which restrained the sheriff of King county from proceeding further with the sale.

Plaintiffs have appealed. The assignments of error—eight in number—call in question the action of the trial court in making and entering its permanent restraining order.

A rather unusual situation is presented in the following summary of the facts as disclosed in the statement of facts. Respondent, whose maiden name was Agnes R. London, was married October 1, 1904, to Francis Floyd McMullen. The parties lived together as husband and wife until 1914, when they parted in Shelley, Idaho. From the latter place, respondent journeyed to Billings, Montana, where she lived until she came to this state in the year 1917, and settled in Seattle. After leaving her husband in 1914, respondent assumed her maiden name, and has since used it. She has never seen nor communicated with her husband since she left his home in Shelley, Idaho. No children were born to Mr. and Mrs. McMullen.

The property sought to be sold on execution was purchased by respondent about eight years ago, and title was taken by her in the name of Agnes R. London. Respondent

rented property, and made out income tax returns, as Agnes R. London, a single woman. In fact, respondent at all times and under all conditions since she left her husband has held herself out to the world as Agnes R. London, a single woman. The first intimation anyone in King county had that she had been married, was when she filed her declaration of homestead.

The single question presented is: May a person with the personal record made by respondent claim, and be allowed, a homestead exemption? Prior to the Laws of 1895, chapter 64, p. 109, a homestead was acquired by mere occupancy. Since that time, it has been necessary to make formal declarations as provided by statute. Our present statutes dealing with homestead exemption, so far as they are material here, are the following:

"The homestead consists of the dwelling house, in which the claimant resides, with appurtenant buildings, and the land on which the same are situated, and by which the same are surrounded, or land without improvements purchased with the intention of building a house and residing thereon, selected at any time before sale, as in this chapter provided." Rem. Supp. 1945, § 528.

"Homesteads may be selected and claimed in lands and tenements with the improvements thereon, as defined in section 1 hereof, regardless of area but not exceeding in net value, of both the lands and improvements, the sum of four thousand dollars. The premises thus included in the homestead must be actually intended or used for a home for the claimants, and shall not be devoted exclusively to any other purposes." Rem. Supp. 1945, § 552.

The required contents of a homestead declaration are outlined as follows in Rem. Rev. Stat., § 559 [P.P.C. § 50-81]:

". . . 1. A statement showing that the person making it is the head of a family; or when the declaration is made by the wife, showing that her husband has not made such declaration, and that she therefore makes the declaration for their joint benefit;

"2. A statement that the person making it is residing on the premises or has purchased the same for a homestead and intends to reside thereon and claims them as a homestead;

"3. A description of the premises;
"4. An estimate of their actual cash value."

Rem. Rev. Stat., § 558 [P.P.C. § 50-79], states:

"In order to select a homestead the husband or other head of a family, or in case the husband has not made such selection, the wife must execute and acknowledge, in the same manner as a grant of real property is acknowledged, a declaration of homestead, and file the same for record."

While homestead laws are liberally construed, it is necessary in this, as in other states, that the requirements of the statutes be complied with in order that the homestead may be obtained. The statements made in respondent's homestead declaration claiming that "she [respondent] is the head of a family, consisting of herself and Francis Floyd McMullen, her husband," and that "she [respondent] claims and selects the same [the property described in the declaration] as and for a homestead for her family," were entirely false. Respondent had not lived with her husband since the time she left him and went to live in Billings, Montana, in the year 1914. During the period of time since that date, she has not been supported by him, nor has she known where he lived or what he was doing. She did not know whether he was dead or alive.

Courts may not shut their eyes and blindly approve such fraudulent and untrue statements as those made by respondent.

"There is a marriage without a family, where the spouses or either of them fail and refuse to discharge all of their reciprocal obligations and live separate and apart from the other." *Yates v. Dohring,* 24 Wn. (2d) 877, 168 P. (2d) 404.

In that case, in interpreting statutes relative to family support, this court made a distinction between a marital relationship and a family relationship by stating:

"In order to interpret the statute in question, which deals specifically with the family relationship, we must distinguish a marital relationship from a family relationship. They do not always coincide, since there are some legal marriages in which the spouses do not maintain a family

relationship. Not only can these relationships be distinguished factually, but there is also a difference in the legal remedies available."

■ Clearly, respondent was not the head of a family, nor a member of a family entitled to take advantage of the homestead exemption laws. *Solnar v. Solnar,* 205 Iowa 701, 216 N. W. 288; *Whidden v. Abbott,* 124 Fla. 293, 168 So. 253; and *Miller v. Stine,* 99 S. W. (2d) (Tex. Civ. App.) 397.

■ Homestead exemption rights are not vested ones, and may be waived or lost by abandonment of the premises. *Swift v. Reasonover,* 168 Tenn. 305, 77 S. W. (2d) 809; *Rasmussen v. Rasmussen,* 368 Ill. 137, 13 N. E. (2d) 166; and *Lusk v. Hitt,* 7 Tenn. App. 389.

■ It seems to us entirely clear that, if homestead rights may be waived or lost by abandonment, that such rights may not be obtained in the first instance unless there is a full compliance with the statutory requirements relative to securing the homestead exemption.

■■ And, as argued by appellant, homestead rights may be lost by estoppel. Estoppel is a preclusion in law, which prevents one alleging or denying a fact in consequence of his own previous act, allegation, or denial, of a contrary tenor. Equitable estoppel, or estoppel *in pais,* is that condition in which justice forbids that one speak the truth in his own behalf. It stands simply as the rule of law which forecloses one from denying his own expressed or implied admission, which has in good faith, and in pursuance of its purpose, been accepted and acted upon by another. To constitute estoppel *in pais,* three things must occur: (1) an admission, statement, or act, inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act.

Equitable estoppel is entitled to the distinction of being one of the greatest instrumentalities to promote the ends of justice which the equity of the law affords. *Knauf & Tesch Co. v. Elkhart Lake Sand & Gravel Co.,* 153 Wis. 306, 141 N. W. 701, 48 L. R. A. (N.S.) 744.

■ As we have pointed out in this opinion, respondent for many, many years held herself out to the world as an unmarried woman. She conducted all her business and social affairs as such. At no time did she give any hint that she was a married woman. Without any doubt, credit was extended to her as a single woman.

Following are decisions of other courts which sustain the application of the rule of estoppel in cases similar to the one at bar: *Home Owners' Loan Corp. v. Netterville,* 132 S. W. (2d) (Tex. Civ. App.) 93; *Hall v. Marshall,* 139 Mich. 123, 102 N. W. 658, 111 Am. St. 404; *Collier v. Union Central Life Ins. Co.,* 100 F. (2d) 411.

The judgment is reversed.

MALLERY, C. J., MILLARD, SCHWELLENBACH, and ABEL, JJ., concur.