[No. 42222.   En Banc.   April 18, 1974.]

FAYE V. SHAFER, *Appellant*, v. THE STATE OF WASHINGTON, *Respondent*.

*Raymond C. Shepherd* and *Robert Butler,* for appellant.

*Slade Gorton, Attorney General,* and *Edward G. Holm* and *Angelo R. Petruss, Assistants,* for respondent.

*Dan Sullivan,* amicus curiae.

HAMILTON, J.—Plaintiff appeals from an order dismissing her complaint, sounding in tort, against the State of Washington. Dismissal was predicated upon plaintiff's failure to file a claim with the state auditor within 120 days from the date of her injury pursuant to RCW 4.92.100.

The relevant facts as alleged are these: On March 29, 1968, the plaintiff, Mrs. Faye V. Shafer, entered a Washington State liquor store in Seattle intending to make a purchase. As she entered the store through the customers' entrance she tripped on a wrinkled rug mat inside the entrance door, fell to the floor and incurred serious injury necessitating some 13 months of medical care.

One or two days later, plaintiff's husband contacted employees at the store about her injuries. He was provided with the name and telephone number of the Washington State Liquor Control Board District Store Supervisor, Mr. Charles Starwick. Upon telephoning Mr. Starwick and informing him of the circumstances of his wife's fall and injuries, Mr. Shafer was referred to another official who in turn advised him to discuss the matter with the assistant

attorney general assigned as legal counsel to the Washington State Liquor Control Board in Olympia.

On May 13, 1968, Mrs. Shafer telephoned the designated assistant attorney general in Olympia, identified herself, and related the circumstances of her injury. The attorney acknowledged awareness of her situation and indicated that he in fact had a file on the case. Mrs. Shafer then advised the attorney that "hip-pinning" surgery had been performed immediately following her injury, that the pins had pulled loose, and that bone graft surgery was now required. She expressed concern as to whether there was sufficient insurance remaining to pay for additional surgery and requested that a representative of the state be dispatched to see about making a partial settlement to help defray the medical expenses. The attorney replied: "No, we can't do it that way—you will have to wait until all medical expenses are incurred, and your doctor has dismissed you, then you should submit a claim through your attorney." Thereafter, Mrs. Shafer telephoned her attorney and informed him of her conversation with the assistant attorney general.

Approximately 4 months later, plaintiff's attorney once again contacted Mr. Starwick, who recalled the store manager's report of Mrs. Shafer's accident. Mr. Starwick likewise remembered Mr. Shafer's telephonic communication of the circumstances. He also indicated that the store manager had made an investigation of the accident, including interviewing and recording statements of store employees who witnessed the incident, and taking photographs of the entrance of the store and of the rug over which plaintiff tripped. Mr. Starwick further stated that he had made a written report and had submitted it along with the photographs and written statements to legal counsel for the Liquor Control Board. Although Mr. Starwick initially indicated he would make a copy of his report available to Mrs. Shafer's attorney, 2 days later he informed her attorney that all files concerning the incident were in the possession of the Liquor Control Board's legal counsel in Olympia. A

claim was then filed on behalf of Mrs. Shafer, pursuant to RCW 4.92.100, on October 14, 1968, 199 days after the occurrence in suit.

Although the trial judge granted the state's motion to dismiss Mrs. Shafer's action for failure to timely file a claim, he specifically noted in the order, by way of "findings,"[1] that the state, through its agents, had completely investigated the accident in suit within 45 days of its occurrence. He also observed that the state had knowledge of all the facts it would have been able to obtain concerning the accident had a claim been filed within the 120-day requirement of RCW 4.92.100. The trial judge further concluded that the state was not prejudiced by the late filing of the claim.

On appeal, plaintiff first contends the claim filing requirements of RCW 4.92.100[2] and .110[3] violate due process

---

[1] Although the trial judge's "findings" were superfluous in the order of dismissal, they appear to be reasonable conclusions based upon the affidavits then before the trial judge, which he was required, as are we, to accept as true.

[2] "All claims against the state for damages arising out of tortious conduct shall be presented to and filed with the state auditor within one hundred twenty days from the date that the claim arose. All such claims shall be verified and shall accurately describe the conduct and circumstances which brought about the injury or damage, describe the injury or damage, state the time and place the injury or damage occurred, state the names of all persons involved, if known, and shall contain the amount of damages claimed, together with a statement of the actual residence of the claimant at the time of presenting and filing the claim and for a period of six months immediately prior to the time the claim arose. If the claimant is incapacitated from verifying, presenting, and filing his claim in the time prescribed or if the claimant is a minor, or is a nonresident of the state absent therefrom during the time within which his claim is required to be filed, the claim may be verified, presented, and filed on behalf of the claimant by any relative, attorney, or agent representing him.

"With respect to the content of such claims this section shall be liberally construed so that substantial compliance will be deemed satisfactory." RCW 4.92.100 (Laws of 1967, ch. 164, § 2, p. 793; Laws of 1963, ch. 159, § 3, p. 753).

[3] "No action shall be commenced against the state for damages arising out of tortious conduct until a claim has first been presented to and filed with the state auditor. The requirements of this section shall

and equal protection concepts enunciated in the fourteenth amendment to the United States Constitution and in Const. art. 1, §§ 3 and 12 of the state constitution. For the reasons stated in *Cook v. State,* 83 Wn.2d 599, 521 P.2d 725 (1974), we decline to so hold.

Plaintiff next asserts that, under the facts of this case as they presently stand, the state should be equitably estopped from asserting an untimely filing under RCW 4.92.100.

We agree that the doctrine of equitable estoppel should apply if the facts as presented be true.

■■ We have recognized on several occasions that the doctrine of equitable estoppel will be applied against the state or against a political subdivision when acting in its governmental as well as proprietary capacity when necessary to prevent a manifest injustice, and the exercise of governmental powers will not thereby be impaired. *Finch v. Matthews,* 74 Wn.2d 161, 443 P.2d 833 (1968); *Edwards v. Renton,* 67 Wn.2d 598, 409 P.2d 153, 33 A.L.R.3d 1154 (1965); *State ex rel. Shannon v. Sponburgh,* 66 Wn.2d 135, 401 P.2d 635 (1965); *Strand v. State,* 16 Wn.2d 107, 132 P.2d 1011 (1943); *Bennett v. Grays Harbor County,* 15 Wn.2d 331, 130 P.2d 1041 (1942); *Abrams v. Seattle,* 173 Wash. 495, 23 P.2d 869 (1933); *State ex rel. Washington Paving Co. v. Clausen,* 90 Wash. 450, 156 P. 554 (1916). With regard to the applicability of this doctrine in connection with our statutory scheme of waiver of sovereign immunity in tort actions, we observed in *Finch v. Matthews, supra* at 176, that:

> Governmental immunity from estoppel is a derivative of the doctrine conferring the sovereign entity with immunity from suit without its consent. 28 Am. Jur. 2d *Estoppel and Waiver* § 123 (1966); Annot. 1 A.L.R. 2d 338, 340 (1949); *Hickey v. Illinois Central R.R.,* 35 Ill. 2d 427, 220 N.E.2d 415 (1966). The legislature of this state

not affect the applicable period of limitations within which an action must be commenced, but such period shall begin and shall continue to run as if no claim were required." RCW 4.92.110 (Laws of 1963, ch. 159, § 4, p. 754).

has indicated that sovereign immunity in tort actions is no longer desirable or acceptable. RCW 4.92.090. The modern trend in both legislative and judicial thinking is toward the concept that the citizen has a right to expect the same standard of honesty, justice and fair dealing in his contact with the state or other political entity, which he is legally accorded in his dealing with other individuals. Therefore, the rule against estopping a governmental body should not be used as a device by a municipality to obtain unjust enrichment or dishonest gains at the expense of a citizen. [Citations omitted.]

Where our legislature has determined that the state "whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation," RCW 4.92.090, we no longer feel it appropriate to withhold under proper circumstances, application of the doctrine of equitable estoppel in relation to the claim provisions of RCW 4.92.100 and .110. Our holding to the contrary in *Forseth v. Tacoma*, 27 Wn.2d 284, 178 P.2d 357 (1947), is no longer viable and is hereby overruled. Having concluded that the doctrine of equitable estoppel can be applied against the state in the context here involved, we must next determine whether all the elements which would allow a finding of equitable estoppel in favor of plaintiff exist, assuming the facts as alleged be true.

The requisites of an equitable estoppel are: (1) an admission, statement, or act, inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party arising from permitting the first party to contradict or repudiate such admission, statement, or act. *Bignold v. King County*, 65 Wn.2d 817, 399 P.2d 611 (1965); *Moore v. Dark*, 52 Wn.2d 555, 327 P.2d 429 (1958); *Nelson v. Bailey*, 54 Wn.2d 161, 338 P.2d 757, 73 A.L.R.2d 1400 (1959); *Code v. London*, 27 Wn.2d 279, 178 P.2d 293 (1947).

Upon the allegations as they stand, it would appear that sufficient factual elements are present to fulfill the enunciated requisites. Employees of the state on the scene of the

accident became immediately aware of the incident, and communicated their awareness by subsequent written reports, statements and photographs to their superiors who, in turn, forwarded the information to the state's legal representative, an assistant attorney general. Mr. and Mrs. Shafer likewise contacted representatives of the state and further alerted them to the circumstances of the incident and to the fact that recompense was expected. And, when Mrs. Shafer contacted the assistant attorney general 45 days after the accident concerning the prospects of a partial settlement, she was, in essence, advised that: (1) the assistant attorney general was aware of the facts and circumstances surrounding her claim; (2) the filing of a claim was not immediately necessary; and (3) a claim should not be filed until all of her medical expenses had been incurred. This information was then communicated by Mrs. Shafer to her attorney[4] who apparently relied upon it. While we recognize that Mrs. Shafer's attorney should have been more cautious with respect to the advice purportedly communicated from the assistant attorney general through Mrs. Shafer, we do not deem this fact, standing alone, should descend as an unyielding bar to plaintiff's claim.

We noted in *State ex rel. Shannon v. Sponburgh,* 66 Wn.2d 135, 143-44, 401 P.2d 635 (1965), that:

> The conduct of government should always be scrupulously just in dealing with its citizens; and where a public official, acting within his authority and with knowledge of the pertinent facts, has made a commitment and the party to whom it was made has acted to his detriment in reliance on that commitment, the official should not be permitted to revoke that commitment.

Here, if the facts be as alleged, it is reasonable to conclude that Mrs. Shafer was led to believe by agents and a legal representative of the state that her claim was known to the state and would be recognized when all of her medical expenses were incurred. Her own attorney did not advise her to the contrary. She was entitled to rely upon

---

[4]Since deceased.

statements made to her by responsible state officials, acting within the scope of their authority, which she did to her detriment.

The order of dismissal is vacated and the cause is remanded for further proceedings consistent with this opinion.

ROSELLINI, HUNTER, and BRACHTENBACH, JJ., concur.

UTTER, J. (concurring)—I concur in the result for the reasons stated in my concurring opinion in *Cook v. State,* 83 Wn.2d 599, 521 P.2d 725 (1974).

FINLEY and WRIGHT, JJ., concur with UTTER, J.

STAFFORD, J. (concurring in part and dissenting in part) —For the reasons set forth in *Cook v. State,* 83 Wn.2d 599, 521 P.2d 725 (1974), I agree with the majority's adherence to the doctrine of sovereign immunity and with its rejection of the constitutional challenge to RCW 4.92.100. Further, I agree that plaintiff, by filing an untimely claim, failed to comply with RCW 4.92.100. Finally, I acknowledge that the doctrine of equitable estoppel may be imposed against the state in a proper case. This, however, is not a proper case for its application. Therefore I dissent.

The majority correctly states that an equitable estoppel requires the establishment of *three* elements: (1) an admission, statement, or act, inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act. *Arnold v. Melani,* 75 Wn.2d 143, 437 P.2d 908, 449 P.2d 800, 450 P.2d 815 (1968-69). However, an attempt to resolve this case solely by reliance on the above mentioned three elements, leads to an oversimplified and unwarranted result.

*Leonard v. Washington Employers, Inc.,* 77 Wn.2d 271, 280-81, 461 P.2d 538 (1969), our latest pronouncement on the subject, contains two *additional qualifications* ignored by the majority:

The listed elements are necessary to establish an equitable estoppel. But they are not necessarily alone sufficient. Not all those who rely upon another's conduct or statements may raise an estoppel. Rather, it is only those who have a *right to rely* upon such acts or representations. . . .

. . .

The essence of both statements of the qualification is that, absent fraud or misrepresentation, estoppel runs in favor only of those who have *reasonably relied* on another's conduct or declarations.

(Final italics mine.) In short, in addition to establishing the three initial requirements, one claiming an equitable estoppel must also have a *right to rely* on the one to be estopped and the reliance must have been *reasonable*.

The burden of proving one's entitlement to an equitable estoppel is upon the one claiming it. *PUD 1 v. Cooper*, 69 Wn.2d 909, 918, 421 P.2d 1002 (1966). The burden is not sustained by mere argument or doubtful inference. *PUD 1 v. Cooper, supra; Stouffer-Bowman, Inc. v. Webber*, 18 Wn.2d 416, 428, 139 P.2d 717 (1943). No party should be precluded from making out his case according to the true facts unless by force of some positive principle of law. *PUD 1 v. Cooper, supra; Stouffer-Bowman, Inc. v. Webber, supra*. Thus, the doctrine of equitable estoppel *"must be applied strictly*, and should not be enforced unless substantiated in *every particular."* (Italics mine.) *PUD 1 v. Cooper, supra* at 918, quoting from *Stouffer-Bowman, Inc. v. Webber, supra* at 428.

Considering that plaintiff has the burden of proving her entitlement to an equitable estoppel and that the doctrine should not be enforced unless substantiated in *every particular,* it is clear the doctrine is not applicable in this case. There is nothing to establish either that plaintiff had a *right to rely* on the state's employees, or having relied, that she did so *reasonably*.

According to affidavits of plaintiff and her attorney, the injury in question occurred in a state liquor store on March

29, 1968. At that time the nonclaim provision of RCW 4.92.100 began to run.

Apparently the matter was reported to the store's employees and a district supervisor on or about April 1, 1968. The supervisor suggested that plaintiff call a specific Assistant Attorney General. The call was not made until May 13, 1968. By that time, approximately one-half of the time allotted under RCW 4.92.100 had elapsed. It is of interest that neither the majority opinion nor the plaintiff seems to assume anything had occurred up to this time to support an equitable estoppel. Indeed, the operative facts to support a claim were as well known to plaintiff as they were to the state's employees.

Plaintiff retained an attorney to handle her potential action against the state. While the record does not disclose the exact date of his employment, it is clear he was in her employ on May 13, 1968, the date on which she telephoned the designated Assistant Attorney General. On that date, plaintiff contends she related the circumstances of her injury to the Assistant Attorney General and he acknowledged an awareness of it and indicated he had a file on the case. Plaintiff expressed concern that her insurance might not cover the anticipated additional surgery "and asked him . . . about making a partial settlement of funds to help defray the medical expenses. He answered, 'No, we can't do it that way—you will have to wait until all medical expenses are incurred, and your doctor has dismissed you, then you should submit a claim through your attorney.' " Thereafter, plaintiff called her *own* attorney, reported the conversation, and did nothing further. The plaintiff and the majority appear to base their theory of equitable estoppel on the foregoing conversation with the Assistant Attorney General.

It is significant that plaintiff not only had a lawyer to represent her in the potential action, but that she reported the conversation to him. At that time either or both of them still had at least 75 days to act on the claim pursuant to RCW 4.92.100. It is also significant that she did *not* rely

on the Assistant Attorney General's statement. She referred the matter to her *own* lawyer for action. Finally, it is important that the affidavits of plaintiff and her attorney contain no assertion that either of them relied upon or acted upon the statement of the Assistant Attorney General. This is not surprising. The asserted comment was not a statement of fact. At best, it was a legal opinion and the legal status of the claim was as available to plaintiff's attorney as it was to the state. So, too, were the operative facts.

This court has had occasion to determine whether one who has a lawyer can be said to have acted in reliance on an opponent's representation of the law and/or facts. We have held that when one hires an attorney before acting, and that attorney has an adequate opportunity to make an independent investigation of the facts and/or the law, it cannot be said that there was action in reliance. *See Rhodes v. Owens*, 101 Wash. 324, 172 P. 241 (1918); *Palmer v. Shields*, 71 Wash. 463, 128 P. 1051 (1913). In *State v. Northwest Magnesite Co.*, 28 Wn.2d 1, 24, 182 P.2d 643 (1947), we stated it thusly:

> It is . . . unfortunate that the commissioner . . . expressed his opinion . . . that the statutes in force were not applicable . . . However, such expression of opinion as to the law, the facts being equally well known to both parties, cannot preclude the state from asserting the true effect of the statutes . . . *Turner v. Spokane County*, 150 Wash. 524, 273 Pac. 959.

It is only logical to conclude that, having retained her *own* attorney and having referred the alleged conversation to him when he still had over 2 months to act,[5] plaintiff should not be permitted to shift the responsibility for filing the claim from her attorney and herself to the state by

---

[5] The affidavit of plaintiff's attorney indicates that he took no positive action until about October 9, 1968, when he made a telephone inquiry about the location of the state's files on the case. This occurred long *after* the nonclaim statute had run. Finally, plaintiff's attorney did not file the requisite claim until nearly 2½ months *after* the last date permitted by RCW 4.92.100.

means of an unwarranted application of the equitable estoppel doctrine. As we indicated in *Palmer,* if plaintiff was misled or deceived, it was the fault of her own attorney not the fault of the state.

Finally, considering the three elements of equitable estoppel recited by the majority, one must say that two have not been established. First, there is no proof of an admission, statement, or act inconsistent with the state's later assertion of the nonclaim statute. At best, the Assistant Attorney General's comment was an opinion of law. Plaintiff had her own lawyer to advise her in this regard. Second, plaintiff did not act in reliance upon any admission, statement, or act of a state employee. Rather, she retained her own lawyer and referred the information and prosecution of the action to him. The operative facts were known to all. Finally, plaintiff having retained her own lawyer and having referred the matter to him when there was adequate time for him to take proper action, had no right to rely on the state's alleged advice. If, however, plaintiff did rely thereon, the reliance was not reasonable. Thus, according to *Leonard v. Washington Employers, Inc., supra,* plaintiff has failed to establish the two additional essential elements of equitable estoppel.

I dissent from that portion of the opinion which has invoked the doctrine of equitable estoppel.

HALE, C.J., concurs with STAFFORD, J.