Rome A. VENTURA and Lake Union
Crew, LLC, Petitioners,

v.

The CITY OF SEATTLE, Respondent,

3100 Fairview Condominium Owners'
Association; Floating Homes Association; and Eastlake Community Council, Intervenors/Respondents.

No. C98–526R.

United States District Court,
W.D. Washington,
at Seattle.

March 19, 2000.

Gregory Thomas Costello, Marten & Brown LLP, Jeffrey M. Eustis, Seattle, WA, for Petitioners.

Eleanore S. Baxendale, Seattle City Attorney's Office, Seattle, WA, for Respondent.

Peter J. Eglick, Helsell Fetterman LLP, Danford Duncan Grant, Seattle City Attorney's Office, Beverlee E. Silva, Marten & Brown LLP, Seattle, WA, for Intervenors/Respondents.

## ORDER RE: SUMMARY JUDGMENT MOTIONS

ROTHSTEIN, District Judge.

THIS MATTER comes before the court on petitioners Rome A. Ventura and Lake Union Crew, LLC's motion for partial summary judgment and respondent City of Seattle's motion for summary judgment.[1] Intervenors 3100 Fairview Condominium Owners' Association, Floating Homes Association, and Eastlake Community Council oppose petitioners' motion and support respondent's motion. After reviewing the pleadings filed in support of and in opposition to the pending motions,[2] the court finds and rules as follows:

## I. BACKGROUND

This case centers around a floating rowing club moored at 11 E. Allison Street, on Lake Union. The rowing club is owned and operated by petitioner Lake Union Crew, LLC. The property and marina located at 11 E. Allison Street are owned by petitioner Rome A. Ventura, who is the sole member of Lake Union Crew.

Respondent City of Seattle (City) contends that in accordance with the City's Shoreline Management Program (SMP) the rowing club structures must comply with City land use and building codes. Petitioners argue that the rowing club is a vessel, and therefore exempt from these codes. Intervenors 3100 Fairview Condominium Owners' Association, Floating Homes Association, and Eastlake Community Council represent neighborhood residents and businesses that side with the City in this dispute.

The following facts are undisputed: The rowing club consists of two steel superstructures welded to steel hulls, or floats. The hulls were designed by naval architects. The two parts of the rowing club were built by shipbuilders at Lake Union Dry Dock and then towed to their present location. Since that time, the rowing club structures have not left the marina.

---

[1] In addition, petitioners ask the court to strike the declarations of Robert Keenholts and Paul Zankich, and the correction sheet to Hermia Ip's deposition. The court did not rely on these documents in reaching its decision. The court, therefore, STRIKES AS MOOT petitioners' motion to strike [docket 111–1].

[2] The court finds that oral argument would not be helpful in resolving the pending motions.

One rowing club structure contains a rowing tank, a workroom, an exercise room, a laundry room, a physical therapy room, and a men's locker room. A second structure contains storage for rowing shells and equipment, a women's locker room, a catering kitchen, and three assembly rooms. The two structures have shipbuilder's certifications, buoyancy/weight estimates from a naval architect, and certificates of documentation from the United States Coast Guard. In addition, the structures are registered as vessels with the State of Washington.

In January 1998, Molly Rice, a shoreline inspector for the City's Department of Construction and Land Use (DCLU), received complaints about the rowing club. After conducting a site inspection, she issued a Shoreline Notice of Violation (NOV), which listed the following violations and needed corrections:

1. The Construction on the site occurred without a permit. Obtain building permits for structures located on site. (Seattle Building Code Section 106)

2. Structures do no appear to meet development standards. Submit plans and obtain permits for existing structures which meet applicable development standards specifically in regard to height, scale and underwater coverage. Revise structures as necessary to comply with development standards. (SMC 23.60.016)

3. Obtain permits for the proposed uses which may include the following: (1) commercial and/or recreational moorage; (2) yacht, boat, or beach club use; or (3) indoor/outdoor participant sports. In order to establish the preceding uses the following must be obtained: a Special Use Permit to establish commercial or recreational moorage; a Master Use Permit to establish use; SEPA and Shoreline Substantial Development Permit. (SMC 23.47.004.A.5. and E.2.; 23.60.020)

The DCLU held a director's review of the NOV on February 26, 1998. An order of the director issued on March 19, 1998 sustained the NOV.

Pursuant to the Land Use Petition Act, RCW 36.70C.040, Petitioners filed a land use petition challenging the NOV. Petitioners claim that the NOV is invalid because the rowing club structures qualify as "vessels" under SMC 23.60.942 and therefore are exempt from the SMP under SMC 23.60.018. Alternatively, petitioners argue that the SMC definition of "vessel" is preempted by federal law. In addition, petitioners claim that the City's issuance of the NOV was arbitrary and capricious and violated Ventura's substantive due process rights and her right to equal protection.[3] Petitioners seek damages under RCW 64.40.020 and 42 U.S.C. § 1983, and attorneys' fees and costs under RCW 43.21C.075(9) and 42 U.S.C. § 1988.

The City removed the petition to this court and filed a counterclaim against Ventura. The counterclaim asks the court to impose on Ventura a civil penalty of $75 per day for violation of the Land Use Code and to issue a permanent injunction compelling Ventura to take the corrective action listed in the NOV or to remove the floating structures.

Petitioners ask the court to grant summary judgment in their favor on their claims. The City asks the court to grant summary judgment in its favor on petitioners' claims and its counterclaim.

## II. DISCUSSION

The court will grant summary judgment if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Genuine issues of material fact exist only when "the evidence is such that a

---

**3.** In their land use petition, petitioners also allege that the City exceeded its legal authority by issuing a NOV against Ventura. Petitioners appear to have abandoned this claim.

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### A. The SMP's Definition of "Vessel"

In their first assignment of error, petitioners allege that the City's decision that the rowing club structures are not vessels was a clearly erroneous interpretation of law. The SMP defines "vessels" as "ships, boats, barges or other floating craft which are designed and used for navigation." SMC 23.60.942. The City maintains that the rowing club structures are not "vessels" because they are not designed and used for navigation. Petitioners argue that under the last antecedent rule, the "designed and used for navigation" requirement applies only to "other floating craft," not to ships and barges. As a result, petitioners argue, the rowing club structures, which were designed as barges, do not need to satisfy the "designed and used for navigation" requirement.

Petitioners fail to persuade the court that the City's interpretation is clearly erroneous. In reaching its decision, the court is guided by two principles of statutory construction. First, the court must liberally interpret the SMP to give full effect to the objectives and purposes of the State Shoreline Management Act. *See* SMC 23.60.012. The State Shoreline Management Act seeks "to prevent the inherent harm in the uncoordinated and piecemeal development of the state's shorelines." RCW 90.58.020. Second, the court must give great weight to an administrative agency's interpretation of a statute unless the court finds a "compelling indication that such interpretation conflicts with the legislative intent." *Washington Water Power Co. v. Washington State Human Rights Commission,* 91 Wash.2d 62, 68–69, 586 P.2d 1149 (1978).

The City's reading of the definition, which requires all floating craft, including barges, to satisfy the "designed and used for navigation" requirement, best promotes the coordinated development of shorelines by narrowing the category of structures that are exempt from the SMP. Moreover, it is unlikely that the drafters of the code intended to distinguish between ships, boats, and barges on one hand, and other floating craft on the other, by requiring only other floating craft to satisfy the "designed and used for navigation" requirement. Petitioners' interpretation would make the determination of whether a craft qualified as a vessel dependent on non-statutory sources. For instance, under petitioners' interpretation, a craft owner could fit his craft within the vessel definition by finding a naval expert who is willing to declare the craft a "barge." Finally, petitioners fail to present a single argument indicating that the City's interpretation conflicts with legislative intent. The court, therefore, finds that the City's interpretation is not clearly erroneous and grants summary judgment in favor of respondent on this issue.

### B. The SMP's "Vessel" Exemption

The regulations contained in the City's SMP do not apply to the "operation of boats, ships and other vessels designed and used for navigation." SMC 23.60.018. In their second assignment of error, petitioners allege that the City's attempt to apply the SMP to the rowing club structures was clearly erroneous because the structures were designed and used for navigation. The City maintains that the rowing club structures do not satisfy this condition.

In support of their argument that the structures were designed for navigation, petitioners state that the structures were designed by naval architects, built by a shipbuilder, and have a shipbuilder's certification, a naval architect's buoyancy/stability calculation, and tonnage certificates, and are documented and inspected by the U.S. Coast Guard.

In response, the City argues that none of these documents demonstrate that the

structures were designed for navigation. The City cites an undated letter from John Dwyer, chief of the Vessel Services Department of the U.S. Coast Guard to Ventura. *See* Baxendale Aff., Ex. 49. In the letter, Dwyer states that the structures' hulls "were not designed to an acceptable standard as required by 46 C.F.R. 177.300" [4] and the superstructures "were not designed to a marine standard." Moreover, the City indicates that neither the shipbuilder's certification nor the Coast Guard documentation cited by petitioners certify the structures' seaworthiness, and that the Coast Guard inspection did not include an evaluation of the structures' design standards.

Petitioners answer that these certificates and documentation are indicia of a vessel, but stop short of pointing to a particular document or certificate that demonstrates that the structures were designed for navigation. Given petitioners' inability to supply this type of evidence, the court finds petitioners unable to demonstrate that the rowing club structures were designed for navigation. As a result, the court finds that the city correctly decided that the structures did not fall within the vessel exemption to the SMP, and grants summary judgment in favor of the City on this issue.[5]

## C. *Preemption*

In their briefing on the summary judgment motions, petitioners modify the basis of their preemption argument. Instead of arguing that federal regulations define the term "vessel" differently and that the federal definition should preempt the City's definition, petitioners argue that the City's finding that the rowing club structures do not qualify for the City's "vessel" exemption interferes with the national regulation of vessels operating in interstate commerce.

Petitioners correctly argue that vessel design standards are set by federal law. Recognizing that various state regulations would unduly burden interstate commerce, the United States Supreme Court has acknowledged that "ship design and construction standards are matters for national attention." *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 166 n. 15, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978) (citing *Kelly v. Washington*, 302 U.S. 1, 14–15, 58 S.Ct. 87, 82 L.Ed. 3 (1937)). However, in order to succeed in their argument that the City codes, which impose height and design requirements, are preempted, petitioners must establish that the City has imposed these requirements on vessels operating in interstate commerce. This they cannot do.

As stated above, the rowing club structures are not "vessels" under the SMP. As a result, the court finds that the rowing club is not acting as a vessel operating in commerce, and therefore the City's design regulations are not preempted by federal law.

## D. *Substantive Due Process*

In their third assignment of error, petitioners allege that the City's arbitrary interpretation of the term "vessel" violated Ventura's rights to substantive due process. Petitioners argue that in determining that the rowing club structures were not vessels, the City did not apply the stated "designed and used for navigation" requirement, but instead required that the vessel be *mainly* used for navigation. The City's use of a shifting definition, petitioners argue, should lead the court to declare the exemption void for vagueness as applied to petitioners.

---

**4.** 46 C.F.R. § 177.300 describes the structural design requirements of the U.S. Coast Guard for the hull of a vessel.

**5.** The City argues that even if a structure falls within the vessel exemption, the City can regulate the non-navigational use of that structure. Having found that the rowing club structures do not fall within the vessel exemption, the court need not consider the validity of this argument.

Given the court's finding that the rowing club structures do not satisfy the plain language of the ordinance, the "designed and used for navigation" requirement, the City's non-navigational use argument is not at issue in this case, and therefore is not a basis for finding a violation of Ventura's substantive due process rights. As a result, the court grants summary judgment in favor of the City on this issue.

### E. *Equal Protection*

In their fifth assignment of error, petitioners allege that enforcement of the SMP against petitioners, but not against similarly situated marina and structure owners on Lake Union, violated petitioners' equal protection rights.

The parties agree that petitioners' claim, which does not involve either a fundamental right or a suspect classification, should be considered under the rational basis test. Under this test, petitioners bear the burden of proving an uneven application of the law. *See McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir.1991). Then, the City must demonstrate a rational basis for treating petitioners differently from other property owners. *See Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1508 (9th Cir.1990).

■ As the City points out, petitioners fail to state an equal protection claim because they do not identify similarly situated owners who were treated differently. Although Ventura identifies structures she believes to be similarly situated, she does not establish that the City has exempted these structures from the SMP's permit requirements. In addition, any differential treatment is explained by the City's use of a complaint based system of compliance. Under this system, the City generally does not investigate SMP violations unless it receives a citizen complaint. In this case, the City inspected the rowing club structures and issued the NOV only after receiving citizen complaints. As a result, the court grants summary judgment in favor of the City on this issue.

### F. *Damages and Attorneys' Fees*

Petitioners assert a claim for damages under RCW 64.40. This statute awards damages to property owners who have filed an application for a permit and faced arbitrary, capricious or unlawful agency action. *See* RCW 64.40.020. Because petitioners have failed to demonstrate that the City's actions were arbitrary, capricious or unlawful, they are not entitled to damages under this statute. For similar reasons, petitioners are not entitled to damages under 42 U.S.C. § 1983.

Petitioners ask for attorneys' fees under 42 U.S.C. § 1988, RCW 64.40, and RCW 43.21C.075(9). Each of these statutes awards attorneys' fees to a prevailing party. Because petitioners have not prevailed on any of their claims, attorneys' fees are not appropriate in this case.

### G. *Equitable Estoppel and the City's Counterclaim*

In its counterclaim, the City asks the court to impose a civil penalty on Ventura for her failure to comply with the Land Use Code and to issue a permanent injunction compelling Ventura to take the corrective action listed in the NOV or to remove the rowing club structures. Ventura responds that even if the vessel exemption does not apply to the rowing club structures, the City should be equitably estopped from enforcing the NOV. In support of this argument, Ventura argues that she reasonably relied on assurances from City officials that a new use permit was not required and on a definition of structures that satisfy the vessel exemption provided by a City official.

■ The court applies the equitable estoppel doctrine when necessary to prevent a manifest injustice and where the exercise of government powers will not be impaired. *See Shafer v. State*, 83 Wash.2d 618, 622, 521 P.2d 736 (1974). Specifically, the court must find: (1) a statement inconsistent with the after-asserted claim; (2)

action by the other party on reliance of this statement; and (3) injury to the other party that arises from permitting the first party to contradict its prior statement. *See id.* at 623, 521 P.2d 736.

The City argues that equitable estoppel is not a valid defense in this case because the actions of an individual officers cannot forfeit the government's zoning power. In support of this argument, the City cites *Buechel v. State Department of Ecology*, 125 Wash.2d 196, 884 P.2d 910 (1994). The *Buechel* court held that an unreviewed, prior decision regarding one piece of property did not prevent the Shorelines Hearing Board from enforcing zoning laws on a second piece of property. *See id.* at 211, 884 P.2d 910. The *Buechel* court did not address whether a prior action or statement with respect to one piece of property estops further action with respect to that same piece of property. *Buechel* does not, therefore, prevent Ventura from raising an estoppel argument in this case.

### 1. *Use Permit*

The third part of the NOV requires Ventura to obtain a new use permit. Although the City admits that it reaffirmed boat moorage use at 11 E. Allison in 1994 and 1997, the City argues that it has since modified its use classifications by separating "commercial moorage" use from "recreational marina" use. Because the rowing club structures are properly classified as a "recreational marina" use, the City argues that Ventura must now apply for a "recreational marina" use permit.

Ventura argues that she reasonably relied on statements by DCLU land use planners Hermia Ip and Malli Anderson that no new use permit would be required. In a letter dated April 10, 1997, Ip stated that "[t]he moorage of a barge is classified as 'commercial moorage' ... for purposes of the Land Use Code." She further stated that "[t]he use of the barge for sheltering the racing shells and equipment of your rowing club is consistent with a 'commercial moorage' use."

In a September 26, 1997 telephone message, Anderson told Ventura, "I've got consensus from everyone now, including my supervisor, that putting ... the rowing shells on the barge and your new use, will not constitute a change of use. It's the same use that's already there, and you don't need any Shoreline Permits or anything. You don't need to renew the old permit—just let it expire."

■ Although it is not clear that Ventura disclosed the full extent of her intended use of the rowing club structures, in light of the statements of Ip and Anderson, the court finds that Ventura presents a genuine issue of material fact as to whether the City is equitably estopped from requiring her to obtain a new use permit.

### 2. *Vessel Definition*

■ Ventura further argues that in deciding to build and open her rowing club she relied on Ip's explanation of vessels that would be exempt from the SMP. In her April 10, 1997 letter, after reciting the applicable SMC provisions, Ip stated:

Based on the above Code provisions, DCLU does not regulate the operation of a barge, so long as it is within the scope of a "vessel," as defined by the Land Use Code. In order to qualify as a vessel, a barge must have a seaworthy full design that meets the United States Coast Guard standards for floatation, safety equipment, and fuel, electrical and ventilation systems, typical of vessels. Further, a barge must have permanent equipment for water travel including a method for steering and propulsion, deck fittings, navigational and nautical equipment, and the required marine hardware. Finally, a vessel must be registered with federal, state, and county agencies.

Ventura argues that the City should be equitably estopped from asserting a narrower definition of a vessel that satisfies the exemption. The court finds that the parties raise genuine issues of material

fact as to whether Ventura disclosed enough information to reasonably rely on this definition and whether the rowing club structures satisfy the definition given by Ip. The court therefore denies the City's motion for summary judgment on its counterclaim.

## III. CONCLUSION

For the foregoing reasons, the court hereby DENIES petitioners' motion for partial summary judgment. The court hereby GRANTS the City's motion for summary judgment on petitioners' claims, but DENIES summary judgment on the City's counterclaim.